# JEREMIAH TAYLOR

*v.*

# THOMAS ATCHISON.

1. FRAUD AND CIRCUMVENTION—*diligence required of the maker of a note.* The mere fact that a party can read, will not cut him off from alleging, even against an assignee before maturity, that a promissory note executed by him was obtained by fraud and circumvention. But he should use reasonable and ordinary precautions to avoid imposition; if able to read readily, he should examine the instrument; if unable to read, or only with difficulty, he may have it read to him by some person present. A party can not act recklessly, disregarding all the usual precautions to learn the contents of the instrument, and then interpose the defense as against the assignee.

2. SAME—*duty of the assignee to use diligence.* The assignee in such case is, equally with the maker, bound to use proper diligence. Where agents of patent rights, who are strangers, offer to sell promissory notes, a prudent man would have his suspicions aroused from that fact, and could protect himself by making inquiry of the party who appears to be the maker.

3. SAME—*application of the rule in this case.* So in an action upon a promissory note, by an assignee before maturity, against the maker, the defense being that the payee obtained the note by fraud and circumvention, it appeared the payee and another person, who were strangers to the defendant, went to his house and proposed to him to become an agent for the sale of certain farming implements, which he at first declined to do, on the ground that he would not become bound for anything. The strangers assured him he would incur no obligation, and he then assented. The implements were to be sent to him to be sold on commission, the terms being agreed upon. They then proposed to give him an instrument for his protection in making sales, as the articles were patented. The payee prepared an instrument and handed it to defendant for his signature, but being unable to read it without difficulty, he requested that it be read to him, which was pretended to be done by the person in company with the payee. They then produced another paper, which they assured defendant was a duplicate of the one read to him, and he signed both papers. These papers were much larger in size than the note, and that which was read to the defendant did not appear, as read, to contain any obligation of the character of a note, and he was not aware he signed one. The inference was, the note was embraced in one of the papers signed, and afterwards detached therefrom and assigned, and the device or trick was resorted to in order to get the maker to sign a note without knowing the fact. It was *held*, the defendant used reasonable caution to guard against the imposition, while

the assignee acted imprudently in taking the note from the payee. The defense was sustained.

APPEAL from the Circuit Court of Jefferson county; the Hon. JAMES M. POLLOCK, Judge, presiding.

The opinion states the case.

Messrs. TANNER, CASEY & WILBANKS, for the appellant.

Mr. C. H. PATTON and Mr. J. K. ALBRIGHT, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellant in the Jefferson circuit court, against appellee, on a promissory note for $140, payable to S. W. Barbour, on the first of October, 1868, with interest, and bearing date the sixteenth of May, of the same year. The note was assigned to appellant, without recourse, and the endorsement is without date. The general issue, and a plea that the note was obtained by fraud and circumvention, was filed, and a trial was had by the court without a jury, by consent of the parties. After hearing the evidence, the court below found for defendant, and rendered judgment for costs. A motion for a new trial was entered, but was overruled by the court, and judgment rendered on the finding, and the record is brought to this court on appeal, and a reversal is asked.

It appears that Barbour and Lowry went to the house of appellee, in the spring of 1868, and represented that they were procuring agents to sell reapers, screw forks and mowers, and solicited appellee to become an agent for their sale, in two townships. He declined, saying he would not become bound for anything, and they represented that they wanted no obligation of any kind. Appellee then assented, upon the condition that

he should incur no liability. They agreed to send implements to the express office at Mt. Vernon, Jefferson county, in this State, and he was to incur no expense, or pay anything on the machines, except express charges. The prices at which they were to be furnished, and the commissions he was to receive, were agreed upon at the time.

They then proposed to give him an agreement that would protect him in making sales, as the articles were patented. Barbour prepared an agreement, which was handed to appellee for his signature, but being unable to read it without much difficulty, he requested that it be read, which Lowry did. Another instrument was then presented, which they assured him was a duplicate, when he signed both papers. Appellee and one Allen, who was present, both swear that both papers were. larger than this note, and about the same size, and neither of them resembled the note sued upon in appearance—that they were much larger. We are satisfied that the testimony given by appellee, and corroborated by Allen, establish these facts.

That appellee did not design to execute the note, and was ignorant of the fact that he had, we think is clearly established by the evidence. We presume that Barbour must have attached the note at the bottom of the page, and below another writing, and thus procured his signature to the note without exciting the suspicion of either appellee or Allen, and subsequently detached it from the other written matter; that there was a fraudulent device and trick practiced, by which appellee was circumvented, is obvious. That it was an outrageous, unmitigated fraud, we entertain no doubt.

It, however, remains to determine, whether it constitutes such a fraud or circumvention as was contemplated in the adoption of the eleventh section of the chapter entitled "negotiable instruments." It is urged that it is not, as appellee could read, and it was his duty to have availed himself of all the sources of information at his command, precisely as should the purchaser of personal property, as to its quality, and having failed to do so, he is estopped from interposing this defense. This is not,

we think, the true construction of this section of the statute. At the common law, a person who was thus imposed upon in the execution of a negotiable instrument, could interpose the fraud as a defense only as against the payee; and it was manifestly the design of the general assembly to alter the common law so as to permit the defense to be made in cases where it could not at common law. And it must be that it was intended that the defense should be extended even to persons who could read, where he has observed reasonable prudence and precaution, and also to give the defense against such an instrument in the hands of an assignee before maturity. These we have no doubt, were the changes designed to be made by this enactment. We perceive no other.

It is, however, necessary that a person executing such an instrument, which is procured by fraud or circumvention, should use reasonable and ordinary precaution to avoid imposition, when the suit is by an endorsee before maturity. If able to read readily, he should examine the instrument, or procure it to be read by some one in whom he can place confidence. If he is unable to read, or does so with difficulty, then he may avail himself of the usual means of information, by having it read by some person present. He can not act recklessly, and disregard all the usual precautions to learn the contents of the instrument, and then interpose the defense against an assignee. As to the payee, it may be otherwise. Did appellee use ordinary precaution? It appears to us that he did. He could read the writing with much difficulty, and being assured that it was a contract in which he incurred no liability, he desired it read, which was done, and was then assured that the other paper was a copy of that which had been read. While this may not be the precaution which would have been observed by an unusually cautious man, still, we think he acted as the great mass of men not in, or educated to, business act in such cases. And he was only required to use reasonable caution, such as govern the majority of prudent men.

Had appellant called on appellee, he could have learned that the note was procured by fraud or circumvention. He was applied to by patent right agents, strangers to him, and he, as a prudent man, should have had his suspicions aroused by the fact that they were selling patent rights, to the same extent as should appellee. They were both acting with the same men who perpetrated a gross fraud on each, and both were equally required to use diligence. We think, under the circumstances, that appellant lacked prudence in taking the note from the payee; but be that as it may, the statute has given the defense, and appellee may avail of it against appellant.

It is urged that, in case of the purchase of personal property, the vendee is bound to use every reasonable precaution to ascertain the quality of the thing sold, and hence, appellee should be held to the same degree of diligence. The proposition as to the vendee is true, with proper limitations. It is true where there is only commendation of the property employed, and there is neither warranty nor fraud. But where there is fraud employed by the vendor, and it is relied upon by the vendee, although not exercising the highest degree of diligence, the fraud will absolve him from the agreement. So in this case. There was fraud to induce the execution of the note, and it was relied upon by appellee, and being thus procured, it was void under the statute. This case comes fully within the construction given to the statute by the previous decisions of this court, and the judgment of the court below must be affirmed.

*Judgment affirmed.*