Webb v. Corbin.

------◆------

No. 8456.

WEBB v. CORBIN.

| 78 | 403 |
| 131 | 6 |
| 78 | 403 |
| 165 | 88 |
| 165 | 232 |
| 165 | 234 |
| 78 | 403 |
| 167 | 542 |

PROMISSORY NOTE.—*Fraud in Procuring Signature.*—*Negligence.*—A party whose signature to a promissory note payable in bank is obtained by fraud as to the character of the paper itself, he being unable to read it and it having been misread to him, and he not being guilty of negligence in affixing his signature, or in not ascertaining the character of the instrument, is no more bound than if it were a total forgery, the signature included.

SAME.—*Negligence.*— *When Question of Fact and When of Law.*—When a negotiable promissory note has been obtained by fraud as to the charac-

ter of the paper, the maker signing in the belief that it was a different contract, the question whether he was negligent in signing, or in failing to ascertain the character of the paper, is ordinarily one of fact; but, if the plea purports to set out all the facts and circumstances under which the note was obtained, the question may be decided upon demurrer as one of law.

SAME.—*Pleading.—Ratification.*—Ratification makes good from the beginning, and, under a denial of an answer of fraud in obtaining a note, subsequent ratification may be proved without pleading it specially.

SAME.—*Non Est Factum.*—A special answer sworn to, which amounts to a plea of *non est factum,* closes the issue and does not admit of a reply.

From the Montgomery Circuit Court.

*M. W. Bruner,* for appellant.

*G. W. Paul* and *J. E. Humphries,* for appellee.

WOODS, J.—The appellant, as endorsee before maturity, sued the appellee, as maker, of a promissory note made negotiable by the law merchant.

The appellee filed an answer in two paragraphs, which the court held good upon demurrer for want of facts. The second paragraph, however, was withdrawn from the consideration of the jury by the charge of the court, leaving for our consideration the first only. Its averments are substantially as follows:

That, near the date of the note sued on, two strangers came to the house of the defendant, pretending to be agents for the "Western Medical Works," of Indianapolis, which they represented to be an extensive institution; that one of them pretended to be a physician, and to be travelling for the purpose of advertising, and appointing agents for, said institution; that the defendant was at the time sixty-eight years old, sick and weak in body and mind, being afflicted with palsy, and living by himself, without any family, at his home in the country, two miles from any town; that the pretended physician examined the defendant and declared that said institution could "cure him sound and well;" that the parties then said they wanted to establish an agency for the sale of their medicines in his neighborhood, and if defendant would accept the

Webb *v.* Corbin.

agency, they would furnish him the medicines and he need not pay for them until sold, and the institution would treat him for palsy free of charge so long as he would sell medi- . cines; that he could sell the medicines without trouble; and the defendant finally told them that if it would not cost him anything, and they thought he could be cured, he would try to sell medicines for them; that they then professed to prepare and fill out a contract of agency that they used in such cases, he telling them in the mean time that he was so old, and his eyes so weak, that he could not read the contract, and had lost his glasses, except an old pair, through which he could not see; that he had retired from business, and was not capable of doing business of that kind; whereupon they assured him that he would in no wise be bound, except to account for the medicines sold; that one of the parties then pretended to prepare and fill up some kind of an agreement in writing, purporting to be, in some respects, in the similitude of a promissory note for the defendant to sign; that at the time the defendant was very weak, sick and nervous, and his eyesight was so dim from disease and old age that he could not read either printing or writing, and he had lost his glasses, and so told the parties; that there was no person in the defendant's house at the time besides himself and the strangers aforesaid; that they said they would read the writing to him, and he relied upon them to read it to him correctly; that one of them pretended to read the contract to him; that, as it was read, the defendant was to be required only to pay the sum of $300 when he should sell enough of said medicines to amount to that sum; that the first lot of medicines to be sent to him would be worth that sum, and the defendant was only to account for the medicines so sold out of the proceeds of the sales, and not otherwise in any event to be bound; that the defendant relied upon the representations of said pretended agents as to the contents of said agreement, and believed they had read it to him correctly; and, having fully explained to them that his eyesight was dim, his spectacles

lost, and that he could not read the agreement, he did, upon their assurance that they had read the instrument correctly, sign his name to it; that the defendant never did intend to make and deliver to said parties a negotiable promissory note, or any obligation that would in any way bind him other than as above stated, and thinking and believing he had only signed the contract of agency as read to him, and was not otherwise bound, he permitted said parties to take the same away with them; that his signature to the note sued on was obtained in manner as above stated. Wherefore, etc.

This answer was duly verified by the defendant.

The case made by this answer is fairly distinguishable from the cases of *Woollen* v. *Whitacre*, 73 Ind. 198; *Ruddell* v. *Fhalor*, 72 Ind. 533; *Cornell* v. *Nebeker*, 58 Ind. 425; *Kimble* v. *Christie*, 55 Ind. 140; *Nebeker* v.˙*Cutsinger*, 48 Ind. 436; *American Ins. Co.* v. *McWhorter, ante,* p. 136; and comes fairly within the rule, well settled by authority and on principle, that a " party whose signature to a paper is obtained by fraud as to the character of the paper itself, who is ignorant of such character, and has no intention of signing it, and who is guilty of no negligence in affixing his signature, or in not ascertaining the character of the instrument, is no more bound by it than if it were a total forgery, the signature included." *Cline* v. *Guthrie,* 42 Ind. 227, and cases cited.

The plea shows that the appellee was sick and enfeebled in mind and body, was himself incapable of reading the contract, and had no one to whom he could appeal for assistance, and that the parties who procured his signature gave a false reading of it, whereby it was made to appear to be what he intended to sign, while it was in fact a widely different contract from what he intended to sign; and, upon all the facts as stated, the appellee was not guilty of negligence in affixing his signature. The question of negligence in such a case is largely a question of fact to be determined by the jury, and so it was left in this instance by the instructions of the court.

The answer, however, after stating the facts, concludes as we have seen, with the allegation that the signature was procured "in manner as above stated;" which is equivalent to an averment that the facts stated constituted all the facts relevant to the subject which occurred, and makes it a question of law for the court whether, in the light of the circumstances alleged, excluding the supposition of any other facts, the appellee acted with the degree of care which the law requires—that is to say, with the prudence of ordinary men similarly situated.

The exceptions taken to the charges of the court to the jury present no different question from that raised by the demurrer to the answer and already considered.

The court sustained a demurrer to a special paragraph of reply, wherein it is averred that, after he had learned the character of the note which he had signed, the defendant had received, and retained possession of, medicines sent to him under the contract and thereby had ratified the note.

If the facts stated constituted a ratification, which may be questioned, the effect was to make the note good from the beginning; and the proof was therefore admissible under the general denial which the appellant had pleaded to the answer. Indeed, the answer was not such as to call for a reply of any kind.   It was a special *non est factum,* which itself closed the issue, and neither required, nor, strictly speaking, admitted of, a replication. *The State, ex rel. Griswold,* v. *Blair,* 32 Ind. 313; *Uhl* v. *Harvey, ante,* p. 26.   And any proof by which it might have been shown that the note was in the beginning, or by ratification had become, binding upon the appellant, was admissible under that issue.

Judgment affirmed, with costs.