52  593
67  155

52  593
89  169
89  170,

THE KALAMAZOO NATIONAL BANK, Appellant, v. JESSE CLARK, Respondent.

Kansas City Court of Appeals, January 30, 1893.

1. Bills and Notes: AGREEMENT ON BACK. An agreement on the back of a promissory note before signing is not a prior or contemporaneous agreement, but a part of the note.

2. ———: SIGNING ONE CONTRACT FOR ANOTHER: FRAUD: JURY QUESTION. If one intending to bind himself by a written obligation, voluntarily signs what he supposes to be the intended obligation, with full means of ascertaining its true character, of which he fails to avail himself, he cannot be heard to impeach its validity when such instrument turns up as a negotiable promissory note in the hands of a *bona fide* holder, but whether he signed in ignorance through artifice of the payee is a question for the jury.

3. ———: INFIRMITY: NEGLIGENCE. If a party is deceived by reason of some natural infirmity or educational defect, his want of faculties to detect fraud shields him, but if he contributes to the imposition or fails to exercise prudent diligence, he should suffer rather than an innocent holder.

4. ———: ———: ———. The jury in passing upon the negligence of a maker of a note can take into consideration his age, mental power and physical infirmities.

5. ———: CONTRACT ON BACK: FRAUD. Where a maker signs a note, believing, through the payee's fraud, there is an agreement on the back thereof when there is not, he is no more bound thereby than if it were a total forgery.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*Irvin Gordon,* for appellant.

(1) The notes being unconditional promises to pay certain sums of money, it was incompetent for the defendant to show a prior or contemporary agreement, not reduced to writing, "that, if the wind mill did not work and give satisfaction, etc., the notes were to be null and void." *Ewing v. Clark,* 8 Mo. App. 570; 76 Mo. 545; *Frissell v. Mayer,* 13 Mo. App. 331; *Henshaw v. Dutton,* 59 Mo. 139; 67 Mo. 666. Where a party voluntarily signs a note, having full and unrestricted means of ascertaining the true character of such instrument before signing the same, but by failure to inform himself of its contents, or by relying on the representations of another as to its contents, signed and delivered a note different in its terms from the one intended to be signed, he cannot be heard to impeach its validity in the hands of a *"bona fide"* holder. *Bank v. Stanley,* 46 Mo. App. 440; *Shirts v. Overjohn,* 60 Mo. 305; *Hamilton v. Marks,* 63 Mo. 167; *Cannon v. Moore,* 17 Mo. App. 92; *Edwards v. Thomas,* 66 Mo. 468.

*Burton & Wight* for respondent.

(1) Assuming that the defendant actually signed the notes sued upon instructions 6 and 7, taken together, presented the correct law to be applied to the

facts as shown by testimony in the case. *Shirts v. Overjohn*, 60 Mo. 305; *Frederick v. Clemens*, 60 Mo. 315; *Cannon v. Moore*, 17 Mo. App. 92; *Bank v. Stanley*, 46 Mo. App. 440. (2) An agreement, written on the back of a promissory note before signing, is not a prior or contemporaneous agreement, but a part of the note. Randolph on Commercial Paper, secs. 92, 229.

SMITH, P. J.—This is a suit upon two promissory notes negotiable in form, made by the defendant to the Phillips & Bigelow Wind Mill Company, a manufacturing corporation of the state of Michigan, and by it assigned to the plaintiff, a banking corporation of the same state. It is alleged in the petition that the wind mill company sold and assigned by indorsement thereon in writing said promissory notes before the maturity thereof. The defense interposed by the answer was that of *non est factum*. There was a trial which resulted in judgment for defendant, to reverse which plaintiff appeals.

The errors complained of arise out of the action of the trial court in the giving and refusing of instructions. The plaintiff's first instruction, which was refused by the court, directed the jury that under the pleadings and evidence their verdict must be for it. The determination of the question thus presented imposes upon us the duty to examine the evidence in the case, which tends to establish about these facts: The wind mill company sold the defendant a wind mill, designed for pumping water, which it agreed to and did put up on the latter's farm. Some time after the mill had been put up an agent of the wind mill company met the defendant who was at a neighbor's, about a quarter from his own place, and there asked the latter to give his two notes for the purchase price of the mill. This the latter refused to do, saying, "I don't intend to

sign the notes until the company makes the mill run."
The agent replied that "the company was responsible
for whatever they do." The defendant then said, "If
you will put that on the note I will sign it, and I will
not do it before—that you will make the mill work."
The agent then turned over the notes and wrote on the
back of them. The defendant asked him to read to
him what he had written. He then read: "In case the
Phillips & Bigelow Wind Mill Company failed to make
the wind mill give satisfaction the notes were to be null
and void." The defendant undertook to read the
indorsement the agent had made on the notes, but not
being a very good scholar and not being able to see on
account of the infirmities incident to age, being over
seventy-two years old, he could not do it, so he asked
the agent to read it for him. The defendant could see
there was writing on the back of the notes, but it seems
he could not tell what it was. The machine never did
work.

The cashier of the plaintiff bank testified that the
notes in controversy were purchased by it of the wind
mill company before maturity, in the usual way, and
in the ordinary course of discount business of the bank.

The notes were produced in evidence and showed
an entire absence of the indorsement thereon, which
the defendant testified the agent wrote. The defend-
ant does not deny that the signature to the notes is
his, but insists that the notes on the face the same as
these, which he signed and delivered to the agent of the
wind mill company, had the written conditions thereon
indorsed, which we have already stated. The question
now is whether or not, under this state of facts, the
court should declare, as a matter of law, that the plain-
tiff should recover.

An agreement written on the back of a promissory
note before signing is not a prior or contemporaneous

agreement, but a part of the note. Randolph on Commercial Paper, secs. 92, 229. In *Shirts v. Overjohn*, 60 Mo. 305, it was stated that the result of the best considered cases on this subject may be generally stated to be, that where it appears that the party sought to be charged intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining for himself the true character of such instrument before signing the same, but by his failure to inform himself of its contents, or by relying upon the representations of another, as to the contents of the instrument presented for his signature, signed and delivered a negotiable note in lieu of the instrument intended to be signed, he cannot be heard to impeach its validity in the hands of a *bona fide* holder." *Bank v. Stanley*, 46 Mo. App. 440; *Cowgill v. Petifish*, 51 Mo. App. 264.

In *Frederick v. Clemens*, 60 Mo. 313, where the essential facts were similar to those in this case, it was said that it should have been left to the jury to say whether defendant, without negligence on his part, signed the note sued on in ignorance of its true character, through any artifice or fraudulent representations on the part of the payee of the note. But does the rule just stated apply to a cause like this? Here the evidence tends to show that defendant did not have the free and unrestricted means of ascertaining for himself the true character of the instruments before he signed them.

In Daniel on Negotiable Instruments, section 847, it is stated: "The fifth class of cases is that in which some natural infirmity or defect of education has been imposed upon, and the party deceived into signing a note, under the impression that it was for a different

amount, or was a contract of a different character.
Thus, if a note was fraudulently or falsely read to a
blind man, and he were to sign it believing it to have
been correctly read, or if a party were unable to read
and signed a note after due inquiry and precaution,
under the assurance that it was an agreement of a dif-
ferent kind, we should have a new element entering
into the consideration of liability. In such cases the
want of faculties to detect the fraud shields the party
from its consequences. He has created no agency or
trust. He has not intentionally or knowingly given
appearance of validity to the instrument. It cannot be
said that he has acted negligently because his infirmi-
ties prevented that diligence which men of ordinary
faculties and education possess."

But, by reference to the adjudged cases, it will be
seen that this rule is probably not as broad as stated
by Mr. Daniel. It has been, in effect, ruled in a num-
ber of cases that, when a person of this class has been
misled and imposed upon by a stranger, to whom he
has delivered a note, and by his own negligence or
careless indifference contributes to the imposition, or
if, by the exercise of a prudent diligence or regard for his
own rights, he might have protected himself, he should
suffer rather than the innocent holder of his paper,
carelessly issued by him. *Williams v. Stole*, 79 Ind.
80; *Fenton v. Robinson*, 11 N. Y. (4 Hun) 252; *Webb v.
Corbin*, 78 Ind. 403; *Greenfield's Estate*, 14 Pa. St. 489;
*Walker v. Ebert*, 29 Wis. 194; *Griffiths v. Kellogg*, 39
Wis. 290; *Bowers v. Thompson*, 62 Wis. 480. These cases
hold that, where such a party has been guilty of no
negligence in affixing his signature, he will be protected
against a *bona fide* holder.

It would thus appear that, though defendant was
partially blind and illiterate, yet, if by the exercise of a
prudent diligence and regard for his own rights, he

might have protected himself against the fraud and imposition of the agent of the wind mill company, it was his duty to do so; otherwise he will not be protected. *Fusili v. Railroad*, 45 Mo. App. 535. The burden of showing prudence was on him. And whether or not, if the defendant, by the exercise of a prudent regard for his own rights, could have protected himself against the fraud and imposition of the wind mill company, was a question for the jury to determine under all the circumstances in the case.

The evidence in this respect was, it seems to us, quite weak. It does not appear that the defendant called on anyone except the agent to read the indorsement the latter represented he had made on the note. It may have been that the neighbor at or near whose house the notes were signed could, had he been requested so to do, have read the indorsement for the defendant, or it may have been that had he gone to his own house that some member of the family could have done so. The defendant seems to have blindly trusted the whole matter to the integrity of the agent of the wind mill company, who for aught that appears was an entire stranger coming to him from a foreign state. Notwithstanding this, this jury may have concluded that since there was evidence before them tending to show that defendant was a man far advanced in life, who had passed his "three score years and ten" and was "in the sear and yellow leaf," and whose mental powers were bordering on imbecility; whose sense of sight was so dimmed by the infirmities of his great age that he could not see to read or if he could see he would be unable to do so on account of his illiteracy, that he had exercised ordinary care and prudence under the circumstances.

In an action for negligence by an infant of the age of eleven years who did not possess the precaution

of an adult, it was held that the jury might take into consideration his age and discretion in determining whether he was guilty of contributory negligence. In such case he is only required to exercise care and prudence equal to his capacity. *Donoho v. Iron Works*, 75 Mo. 402; *Duffy v. Railroad*, 19 Mo. App. 380; *Saare v. Railroad*, 20 Mo. App. 211. And it is difficult to see why the jury may not take into consideration the circumstances detailed in the evidence of this case in determining the question whether the defendant exercised ordinary care and watchfulness in the protection of himself against imposition at the time he signed the notes. These circumstances are elements that would naturally enter into the consideration by the jury of the question of negligence.

However all this may be, we cannot say that there was such a lack of evidence of prudence on the part of defendant in the transaction as to warrant the court in giving the plaintiff's peremptory instruction.

The plaintiff further complains of the action of the court in giving two instructions, one for defendant and the other on its own motion, which, in effect, directed the jury that, if defendant signed the notes sued on and delivered the same to the agent of Phillips & Bigelow Wind Mill Company, for said company, and the said Phillips & Bigelow Wind Mill Company, before the maturity of said notes, sold and delivered the same to the plaintiff; and if they further believe that the said plaintiff purchased said notes in good faith, without notice of any irregularity or artifice in procuring the execution of the same, in due course of business, for a valuable consideration, then the jury will find for the plaintiff the amount of the principal and interest, due on said notes, unless they further believe that at the time of signing the notes sued upon said Houston, to whom the notes were delivered, pretended to write,

and did write, on the back of what purported to be the said notes, and so informed defendant and caused the defendant to believe that he had written on the back of said notes, "that in case the Phillips & Bigelow Wind Mill Company failed to make the wind mill pump, etc., purchased by defendant from said wind mill company, properly work and give satisfaction, these notes are to be null and void," and that defendant signed said notes without fault or negligence on his part, believing and supposing that said notes had such indorsement on their backs, then the notes sued upon were not the notes of the defendant, and you will find for the defendant.

The correctness of the rule announced in these instructions is supported by the authorities everywhere, as will be seen by reference to the fourth edition of Daniel on Negotiable Instruments, sections 847, 848, 849, 849a, and the cases there noted.

Upon the facts embraced in the hypothesis of the latter clause of the foregoing instruction which were found by the jury, and which finding is conclusive on us in a case like this, the rule of law is well settled that the defendant is no more bound by the notes than if they were total forgeries including the signatures. *Cline v. Guthrie*, 42 Ind. 227; *Webb v. Corbin*, 78 Ind. 403; *Walker v. Ebert*, 39 Wis. 194; *Nance v. Lary*, 5 Ala. 370; *Taylor v. Atchison*, 54 Ill. 196; *Wait v. Pomeroy*, 20 Mich. 425.

The evidence of the defendant, which was admitted by the court over the objection of plaintiff, but to which no exception was taken, or if so not preserved, we think anyhow was properly admissible under the plea of *non est factum* upon the theory that the notes were a forgery.

The judgment of the circuit court must be affirmed. All concur.