## LINDLEY v. HOFMAN.

[No. 2,756.   Filed April 21, 1899.]

BILLS AND NOTES.—*Pleading.*—*Answer.*—*Non Est Factum.*—An answer to a complaint in an action on a promissory note, alleging that defendant could not read, and that the payee undertook to read the instrument for him, and read same as if it contained a clause making the payment thereof conditional, but failed to read that it was payable in bank, and provided for the payment of interest from date, is not sufficient as an answer of *non est factum*, where it was not averred that a disinterested person could not be found to read the instrument for him.

From the Clay Circuit Court.   *Reversed.*

*E. S. Holliday* and *Frank A. Horner*, for appellant.

*S. D. Coffey* and *G. A. Knight*, for appellee.

WILEY, J.—Appellant sued appellee upon a promissory note, of which the following is a copy: "$120.00.   Brazil, Ind., Aug. 1, 1896.   Twelve months after date I promise to pay to the order of William A. McGee one hundred and twenty dollars and attorneys' fees if not paid when due. Payable at the First National Bank of Crawfordsville, Ind.', with interest at the rate of eight per cent. per annum from date until, paid, payable annually, value received, without any relief whatever from valuation or appraisement laws. The makers and indorsers severally waive presentment for payment, protest, and notice of protest, and nonpayment. Conrad Hofman." The note was indorsed as follows: "Pay Frank Lindley.   William McGee." The complaint averred that "before maturity of such note the said William A. McGee sold, assigned, and transferred by indorsement in writing on the back thereof, and delivered the said note to the plaintiff herein, who has been at all times since, and still is, the owner and holder thereof."

Appellee answered in four paragraphs, to the second, third, and fourth of which a demurrer was filed and over-

ruled. Appellant refused to plead further, and judgment was rendered against him for costs. The assignment of errors challenges the action of the court in overruling the demurrer to the second, third, and fourth paragraphs of answer. Counsel for appellant, in their brief, say: "We waive the errors assigned in overruling the demurrer to the third and fourth paragraphs of appellee's answer." This leaves for our consideration solely the sufficiency of the second paragraph of answer. This paragraph proceeds upon the theory of a special *non est factum*, and it is therein alleged that the original payee of the note sued on (McGee) represented to appellee that he was a skilled physician; that he was representing a sanitorium in Chicago; that at the time appellee's wife was sick with stomach and female trouble; that he was anxious to have her treated and cured; that the said McGee represented to him that he could permanently cure her; that he would undertake her treatment, and if he did not effect a permanent cure, such treatment should be free of charge; that thereupon said McGee and appellee entered into a contract, whereby said McGee agreed to treat appellee's wife; that, in the event he should effect a permanent cure, he should receive therefor $120, but that, in the event he should fail, such treatment should be free to appellee; that said McGee promised to reduce said agreement to writing; that he then and there pretended to do so, but instead thereof drew up the instrument of writing sued on; that at the time of the signing thereof appellee, by reason of his defective eyesight, was wholly unable to read writing or print, and was wholly unable to read said instrument, and so informed said McGee; that thereupon said McGee undertook and promised appellee to read said instrument to him correctly; that he did pretend to read it, but in so doing wholly failed to read the provision that it was payable at the First National Bank of Crawfordsville; that he wholly failed to read that clause therein which provides for the payment of interest, but instead read the same as if it contained a clause providing that,

Lindley *v.* Hofman.

in the event said McGee failed to cure permanently appellee's wife, the same should not be payable, but should become and remain void; that appellee "was wholly without means of learning or ascertaining the contents of said instrument except as he ascertained the same from said McGee, and he was compelled to, and did, rely wholly upon him to read said instrument and inform him of its contents, as the said McGee at the time well knew, and said McGee, by means of the false and fraudulent reading, * * * obtained the defendant's signature thereto; that he signed the same wholly without any negligence on his part; that he never at any time agreed with the said McGee to execute to him a note governed by the law merchant; that he never at any time agreed to or intended to execute any such paper or obligation, and he would not have signed the same had he known that it was a note payable in bank," etc. The answer concludes by averring that the instrument sued upon was procured by said McGee in the manner and under the circumstances stated, and that said instrument is not his act and deed.

The theory of this paragraph of answer is that of a special *non est factum.* While the answer does not deny that appellee signed the note, or that the signature thereto is not genuine, it attempts to set up facts to show that by the representations therein stated, he was induced to sign it, when the contract between him and the original payee was essentially different from that stated in the note, and when in fact he thought and believed that he was signing a paper which declared the contract as it actually was. If, therefore, this paragraph of answer is good, it must be good upon the theory relied upon, for it is evident that in it no other defense to the action is attempted to be set up. We are not unmindful of the general rule that, where the execution of an instrument is procured by deceit, fraud, and misrepresentation, such facts may be pleaded as a defense, even against a *bona fide* purchaser. That general rule is clearly stated in Vol. 4 Am. & Eng. Ency. of Law (2nd ed.), p. 326, as follows: "If

a person signs a negotiable instrument which differs in its terms in some material respect from the instrument which he intended to sign, or if, intending to sign an instrument of an entirely different character, he places his signature to a negotiable instrument, the mistake as to the terms or character of the instrument being caused by the fraud, deceit, or misrepresentations of another, and not being due to laches or negligence on the part of the signer, the latter is not liable upon the instrument although it has passed into the hands of a *bona fide* holder for value." So it has been held that where one by fraud was induced to sign a negotiable instrument, thinking it was a non-negotiable one, he could successfully defend against it. *Kellogg v. Steiner*, 29 Wis. 626.

In Iowa it was held that, where a note was for a larger amount than the defendant knew when he was fraudulently induced to sign it, even a *bona fide* holder could not recover. *Green v. Wilkie*, 98 Iowa 74, 66 N. W. 1046, 36 L. R. A. 434. See, also, *Griffiths v. Kellogg*, 39 Wis. 290, 20 Am. Rep. 48; *Bowers v. Thomas*, 62 Wis. 480, 22 N. W. 710.

In *Walker v. Ebert*, 29 Wis. 194, 9 Am. Rep. 548, the court, by Dixon, C. J., said: "The party whose signature to such a paper [a promissory note] is obtained *by fraud as to the character of the paper itself*, who is ignorant of such character, and has no intention of signing it, and who is guilty of no negligence in affixing his signature, or in not ascertaining the character of the instrument, is no more bound by it than if it were a total forgery, the signature included." This is strong language, but we believe it forcibly declares a wholesome and sound doctrine, which is in harmony with the authorities. In addition to the foregoing, we cite the following authorities in support of the proposition under consideration: *Cline v. Guthrie*, 42 Ind. 227, 13 Am. Rep. 357; *Detwiler v. Bish*, 44 Ind. 70; *Soper v. Peck*, 51 Mich. 563, 17 N. W. 57; *Gibbs v. Linabury*, 22 Mich. 479; *Omaha, etc., Bank v. Lierman*, 5 Neb. 247; *Nat. Ex-*

Lindley *v.* Hofman.

*change Bank* v. *Veneman,* 43 Hun 241; *Butler* v. *Carns,* 37 Wis. 61.

In *Cline* v. *Guthrie, supra,* it was held that where the maker of a promissory note payable at a bank in this State was induced by fraud and circumvention of the payee to sign his name thereto, when he honestly supposed and believed he was writing his name on a blank piece of paper, to enable the payee to see how his name was spelled or written, and such payee, before its maturity and for value, assigned it to a *bona fide* purchaser, such facts, pleaded in an answer constitute a complete defense to an action upon the note by an assignee.   The court, by Buskirk, J., said: "It is well settled by authority and on principle, that the party whose signature to a paper is obtained by fraud as to the character of the paper itself, who is ignorant of such character, and has no intention of signing it, and who is guilty of no negligence in affixing his signature, or in not ascertaining the character of the instrument, is no more bound by it than if it were a total forgery, the signature included."   Referring to *Walker* v. *Ebert* 29 Wis. 194, the court quotes approvingly the following: "The reasoning of the above cases is entirely satisfactory and conclusive upon this point.   The inquiry in such cases goes back of all questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity and without notice.   It challenges the origin or existence of the paper itself; and the proposition is, to show that it is not in law or in fact what it purports to be, namely, the promissory note of the supposed maker.   For the purpose of setting on foot, or pursuing this inquiry, it is immaterial that the supposed instrument is negotiable in form, or that it may have passed to the hands of a *bona fide* holder for value.   Negotiability in such cases presupposes the existence of the instrument as having been made by the party whose name is subscribed; for, until it has been so made and has such actual legal existence, it is absurd to talk

about a negotiation, or transfer, or *bona fide* holder of it, within the meaning of the law merchant. That which, in contemplation of law, never existed as a negotiable instrument, cannot be held to be such; and to say that it is, and has the qualities of negotiability, because it assumes the form of that kind of paper, and thus to shut out all inquiry into its existence, or whether it is really and truly what it purports to be is *petitio principii*, begging the question altogether. * * * For the purpose of this first inquiry, which must be always open when the objection is raised, it is immaterial what may be the nature of the supposed instrument, whether negotiable or not, or whether transferred or negotiated, or to whom or in what manner, or for what consideration or value paid by the holder. It must always be competent for the party proposed to be charged upon any written instrument, to show that it is not his instrument or obligation. The principle is the same as where instruments are made by persons having no capacity to make binding contracts; as, by infants, married women, or insane persons; or where they are void for other cause, as, for usury; or where they are executed as by an agent, but without authority to bind the supposed principal. In these and all like cases, no additional validity is given to the instruments by putting them in the form of negotiable paper. See *Veeder* v. *Town of Lima*, 19 Wis. 297 to 299, and authorities there cited. See, also, *Thomas* v. *Watkins*, 16 Wis. 549."

The case of *Detwiler* v. *Bish*, 44 Ind. 70, is in point here. That was an action upon a promissory note payable in a bank in this State, which had passed to appellant by indorsement before maturity. The appellee answered that there was no agreement or contract between the original payee and himself by which a note was to be made; that no note was shown or read to appellee; but alleging there was a contract about other matters, setting it out, which he signed, and that if the note in suit was contained in the paper signed, he could not with reasonable diligence have discovered the same; that he

never gave the note, and that, if his signature to it was genuine, it was obtained without his knowledge or consent, by fraudulent means, to him unknown, and which he could not, with reasonable diligence, have discovered. This answer was held good, and in passing upon it the court said: "We regard this paragraph as setting up fraud in procuring the defendant's signature to the note when he thought he was signing another paper."

It will be observed that in all the cases cited, where this general rule has been under discussion, the decisions have been grounded upon two basic propositions: (1) That the execution of the instrument must have been procured by fraud, deceit, and misrepresentation; and (2) that the party executing it must have been free from negligence in affixing his signature thereto. It is not enough that he executes the instrument when he thought and believed that he was executing an entirely different one, but he must be induced to execute it by fraud, deceit, etc., and he must be free from laches and negligence on his part. If he can read, he must read it for himself. If he can not read, he must have some one upon whom he can rely read it to him, if that is possible; for, as a general rule, as we shall presently show, he has no right to rely upon the adverse party to read it for him. In the case before us appellee's learned counsel contend that the paragraph of answer we are now considering was moulded largely from the answer in the case of *Webb* v. *Corbin*, 78 Ind. 403, and that upon the authority of that case the answer is good. If the facts stated here bring the facts within the acts stated in the answer in that case, then we must hold the answer good, for the rule there declared is binding upon us. We can not, however, reach the conclusion that the two answers are at all similar. In that case the answer set up facts showing that the appellee was an old and infirm man, who was sick of palsy; that the parties who procured the execution of the instrument represented to him that they could "cure him sound and well;" that they represented to him

that they were agents for the "Western Medical Works," etc.; that they were advertising and appointing agents; that if he would accept the agency, they would furnish him the medicines, and he need not pay for them until sold, and the institution would treat him for palsy free of charge; that they then professed to prepare a contract of agency; that he told them that he was so old and his eyes so weak, and he had lost his glasses, that he could not read the contract, and could not see; that he had retired from busi-ness, and was not capable of doing business of that kind; that he lived by himself in the country, two miles from any town; that he had no one to read the contract for him; that there was no one in his house at the time except the strangers and himself; that they said they would read the contract to him correctly; that one of them pretended to read it, and that, as it was read, he was to be required only to pay the sum of $300 when he should sell enough of medicine to amount to that sum, and that he relied upon such representa-tions, and believed that they had read it correctly. Upon a casual reading of these answers there appears to be quite a similarity, but upon a closer examination and analysis of them they materially and essentially differ. There the appel-lee thought and under all the facts had reason to believe, that he was signing a contract embodying his agreement with the strangers. He was entirely alone, and had no one to read the instrument for him, and the facts show that he was where he could not procure any one to perform such service. Un-der these facts it was held that he had a right to rely upon the representations of those with whom he was dealing, and that he was not guilty of negligence. But from the answer in this case, it appears that appellee knew he was signing a note, for he fully understood the terms and nature of it, and does not pretend that he did not understand it except in two particulars: (1) That McGee wholly failed to read that it was payable in bank; and (2) that he wholly failed to read that clause which provides for the payment of interest from date,

but read the same as if it contained a clause that, in the event McGee failed to cure permanently appellee's wife, the note should not be payable, but void.    Thus we see appellee was not misled as to the character of the instrument he was signing, as the appellee was in *Webb* v. *Corbin,* 78 Ind. 403, or as appellant was in *Cline* v. *Guthrie,* 42 Ind. 227, where, by fraud and deceit, he was induced to write his name on what he believed to be a blank piece of paper, to enable certain parties to see his signature, which turned out to be a note, which he did not voluntarily deliver to the payees, but which was wrongfully and forcibly taken possession of by them.    In the answer in this case, there is no averment where appellee was when he signed the note.    It is not stated that he was alone, or was without other means of having it read to him except by McGee.    It was shown that he had a wife, and it is possible that he had children.    He does not aver that his wife could not read.    It is not shown that he could not have procured some one other than McGee to read the note for him, or that he lived remote from other persons who could read.    A pleading must be most strongly construed against the pleader.    It may be that appellee lived in a populous city or town, with people and friends all about him; and while it is true it is averred that he was compelled to and did rely upon McGee to read the note to him, and that he was without negligence, we must hold such averments, in the light of all other facts pleaded, as mere conclusions.    Appellee's counsel contend that the averments that appellee was without negligence is conclusive.    We cannot adopt this rule in cases of this character.    Here appellee rested his answer upon the fraud, deceit, and misrepresentations of McGee, and it was necessary for him to aver such facts as would affirmatively show that he had a right to rely upon such representations, and that he himself used due diligence.    The averment referred to is a mere conclusion.    A pleader must aver facts, and not state conclusions.    The material averments we have referred to were wholly omit-

ted from the answer. We have before adverted to the general rule that a person who is to execute an instrument, and is unable to read it, has no right to rely upon the adverse party to read it for him. That rule has been fully and clearly stated in *Robinson* v. *Glass*, 94 Ind. 211, by Elliott, J., as follows: "We have stated the general rule to be that one who signs an instrument must read it, or have it read to him, and have said that the rule does not operate where a trick or artifice is resorted to for the purpose of preventing the person from reading the instrument. We are now to consider what may be deemed such a trick or artifice. Ordinarily, one contracting party has no right to rely upon the statements of the other as to the character or contents of a written instrument (this, indeed, is only another form of stating the general rule); but while this is true, it is also true that if a known trust and confidence is reposed in the person making the representations, and there is a relationship justifying such trust and confidence, then the person to whom the representations are made may rely upon them." It is to be observed that the exception to the rule is that, where a known trust or confidence is reposed in the person making the representations, and there is a relationship justifying such trust and confidence, then the party to whom the representations are made has a right to rely upon them.

The facts pleaded in the answer are not sufficient to show such a relationship between appellee and McGee as to justify the former in reposing such trust and confidence in the latter, and hence he had no right to rely upon the representations he made. As the answer purports to set out all the facts and circumstances under which the note was executed and obtained, the question of negligence may be determined upon demurrer, as one of law. It was so held in *Webb* v. *Corbin*, 78 Ind. 403. Under the authorities, we must hold that appellee was negligent in signing and delivering the note, and that the facts pleaded are not sufficient to constitute a good answer upon the theory of a special plea of *non est*

*factum.* It follows that it was error to overrule the demurrer to the second paragraph of answer. Judgment reversed, and the court below is directed to sustain the demurrer.