NEW MADRID BANKING COMPANY, Respondent,
v. POPLIN, Appellant.

St. Louis Court of Appeals, February 18, 1908.

1. FRAUD IN PROCURING CONTRACT: Non Est Factum: Innocent Purchaser. Where a party is induced by fraud to execute a note, and executes it believing he was executing a different contract, if he is not negligent he is not liable on the note in a suit even by an innocent holder for value, it is not his note and he is not estopped to deny it where he is guilty of no negligence.

2. ———: ———: ———: Negligence in Failing to Read Contract. Where a party being sued on a note by an innocent holder for value pleaded in defense *non est factum* and it was shown that the defendant, maker, could neither read nor write, but that his son, who could both read and write, was present at the time of the execution of the note and signed the defendant's name at the latter's request, the defendant could not be heard to say that he did not know the contents of the instrument which he executed; the son was his agent in executing it and it was his duty to have the son read it; failure to do so was gross negligence which estopped him to deny its execution.

3. ———: ———: ———: Ability to Understand Contract: Instruction. In such case where the son was only fourteen years old, but where there was no evidence tending to show that he could not understand the distinction between a promissory note and other forms of contract, an instruction authorizing a verdict for the defendant if the youth was ignorant of the distinction between notes and other forms of contract was properly refused.

Appeal from Stoddard Circuit Court.—*Hon. James L. Fort,* Judge.

AFFIRMED.

*W. E. Edmonds* and *H. S. Shaw* for appellant.

"If a party were unable to read, and signed a note after due inquiry and precaution, under an assurance that it was an agreement of a different kind, whether he signed in ignorance, through artifice of the payee, is

a question for the jury." Bank v. Clark, 52 Mo. App. 593; Frederick v. Clemens, 60 Mo. 313; Harrison v. Walden, 89 Mo. App. 164.

*N. A. Mozley* and *D. R. Cox* for respondent.

One who can read, in action on a note signed by him, cannot defend upon the ground that he did not read the note and did not know its contents and had not agreed to give any such note. Catterlin v. Lusk, 98 Mo. App. 182, 71 S. W. 1109. Appellant says he could not read, but had directed his son, who could read, to act for him. Appellant knew his son could read and did not have him read the note to him before attaching his name to it. Crim v. Crim, 162 Mo. 544; Johnson v. Insurance Co., 98 Mo. App. 590. The relation of principal and agent existed between appellant and his son in signing the note. Whatever knowledge the agent had, or should have under the circumstances, will be imputed to appellant. Investment Co. v. Bank, 96 Mo. App. 125; Mayes v. Robinson, 93 Mo. 114; Jennings v. Todd, 118 Mo. 296; Bank v. Skeen, 101 Mo. 683; Brown v. Hoffelmeyster, 74 Mo. App. 385.

NORTONI, J.—This suit is on a promissory note. The defense is that the note was procured as a result of a fraudulent practice, etc., and a failure of consideration. The evidence does not disclose whether the consideration failed or not. The record is so meagre and obscure in this respect that it is difficult to discern whether the defendant received anything or not. Presumably he did not. Plaintiff purchased the note before it was due for a valuable consideration and in entire good faith. It is an innocent holder without notice of any fraud or deception practiced upon the maker, if there was any such. The jury found, in effect, there was no fraud practiced on the defendant and from a careful study of the record, we are impressed with the

same belief.  The finding and judgment were for the plaintiff and defendant appeals.

The material facts are: one Payne, a travelling agent for a window fastener owned by one Garner, called upon the defendant at his farm and negotiated a contract of some sort with him, whereby the defendant either purchased, or was to become agent for the sale of such window fasteners.  It might be said here there was nothing in defendant's evidence affirming that he expected to become agent, while he does say: "I was buying some window fasteners."  The argument of defendant's counsel and instructions requested by them seem to indicate that they understood there was a contract involved in the case whereby defendant was to become agent for the window fasteners instead of purchasing them outright.  However this may be, defendant's evidence does not bear out that theory.  At any rate, as a result of the visit of this agent, Payne, to the defendant, the agent procured defendant's note, as is usual in such cases.  It is dated June 3, 1904; in amount, $147; to bear eight per cent interest from maturity.  By its provisions it became due December 16th, after date, and was signed by defendant.  The defendant being an illiterate man, his name was signed to the note by his son, who could both read and write.  The son was about fourteen years of age.  He signed his father's name thereto in his presence and at his instance and request, all of which was admitted by defendant on the witness stand.  The note was assigned to the plaintiff bank for a valuable consideration ten days after it was executed; to-wit, June 13th, and long before it was due.  The defendant having pleaded fraud and deception practiced upon him in procuring the note, plaintiff introduced the note at the trial and assumed the burden of showing that it procured the same for a valuable consideration and in good faith before maturity and without any notice whatever of the alleged

fraud, if any, practiced on the maker by Payne in procuring the same. It assumed the burden promptly and disposed of the matter properly, in accordance with the rule in this State. [Hamilton v. Marks, 63 Mo. 167.] In truth, the facts that plaintiff is an innocent holder for value by virtue of the purchase of the note long before due and that it acted in entire good faith in the matter, stand conceded. It is not even open to controversy on the record before us. Of course, a proper application of the doctrine referred to, however, depends upon the fact of whether or not the defendant. executed the note, for if he did not actually execute the note, or if he executed the note believing and intending it was a different contract and not a note, and is guilty of no negligence about the matter, he would then be protected even as against an innocent holder for value for the reason it is not his note and he is in no wise estopped to deny it by his negligence even though it be in the hands of an innocent party. [Frederick v. Clemens, 60 Mo. 313; Kalamazoo Natl. Bank v. Clark, 52 Mo. App. 593; Daniel on Negotiable Instruments (5 Ed.), sec. 847.]

The defense is somewhat obscure. It predicates upon the doctrine last adverted to, however. As we glean it from the record, it appears the defendant entered into some kind of a contract with the agent, Payne, acting in behalf of Garner, his principal, with respect to certain window fasteners, by which contract he was to become agent for the same, as contended by his counsel, or purchased the window fasteners. outright, as stated by him in his testimony. The defendant is unable to read or write and says he signed, or caused his son to sign, his name to a paper embodying what he understood was a contract and nothing else, and did not sign, nor authorize his son to sign, his name to the note in suit, or any other note for that matter; that some sort of artifice or slight of hand was prac-

ticed, whereby he signed the note, when in fact, he was to sign a contract of a nature not disclosed, probably of agency, since his counsel so contend. The evidence fails to disclose what it was. There is no denial in the defendant's evidence, however, that the instrument which afterwards turned out to be a note and now in suit, bears defendant's name, signed thereto by his son in his presence and at his direction. It is true it was written by Payne, the agent, in defendant's presence, however, and defendant's signature was affixed, at his request, by his son. The proposition relied upon by defendant is that although his son signed his name to the note, it was to be a contract of some other nature (not explained) and therefore the note is *non est factum*. He asserts that because of his illiteracy mentioned, he was imposed upon and deceived by Payne, the agent, without fault or neglect on his part; that is to say, that he cannot be considered at fault for having neglected to read the paper signed for the reason that he could not read the same. The defense thus presented seems to entirely overlook the fact that defendant's fourteen-year-old son who was acting for him and signed his name at his request, could both read and write, as the evidence discloses, and that defendant neglected to cause the son to read or otherwise examine the instrument before signing his name thereto. The court instructed the jury that if the defendant "did not authorize his son to sign defendant's name to the note in suit, then and in such event the note is void and of no legal value in whosoever's hands it may be found;" and the verdict must therefore be for defendant. Now the jury, with this instruction before them, found the issues for the plaintiff and by so doing, affirmed that defendant did authorize his son to sign the note; this of itself eliminates the defense of *non est factum*, so far as this court is concerned. In other words, the jury found that defendant authorized his son to sign the note in

suit. This alone should dispose of the case and lead to an affirmance of the judgment. Be that as it may, we will examine the questions presented.

It is the established law in this State that where it appears the party sought to be charged intended to bind himself by some obligation in writing and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means for ascertaining for himself the true character of such instrument before signing the same, but, by his failure to inform himself of its contents or by relying upon the representations of another, as to the contents of the instrument presented for his signature, signed and delivered a negotiable note in lieu of the instrument intended to be signed, he cannot be heard to impeach its validity in the hands of a bona fide holder. [Shirts v. Overjohn, 60 Mo. 305; Kalamazoo Natl. Bank v. Clark, 52 Mo. App. 593.] Now it appears that the rule of those cases alone is sufficient to preclude defendant on the facts in this case, for here, while it is true the defendant could neither read nor write, and while it may be true he relied upon the representations of the agent as to the contents of the instrument, still it stands out prominently that his son, who could both read and write, was present, acting for him at his instance and request, was his agent then and there to all intents and purposes, and it was defendant's duty to cause him to read the instrument before affixing his signature thereto. If the son did not understand, he could have read it in the hearing of the defendant, who would at least understand the difference between a note, a promise to pay money, and a contract of agency. It is certain in a case where no fraud is practiced, the person signing the note or other contract is conclusively presumed to know its contents and to accept its terms, and the fact that he did not read it will in no manner alter the rule nor excuse him. [Catter-

lin v. Lusk, 98 Mo. App. 182, 71 S. W. 1109.] Now while the defendant was illiterate, his son was not, and it seems, in view of these facts, the question of defendant's negligence in signing the paper without examining or causing it to be examined by his son, removes the case from the class indicated by Frederick v. Clemens, 60 Mo. 313, as one where the question of his negligence should go to the jury, and places it squarely within the domain where it is entirely proper for the court to pronounce the defendant negligent as a matter of law, precisely as it would under like circumstances in a case where the defendant could himself read and write. We are of opinion that his negligence was so palpable as to render it a question about which all reasonable minds would reach the same conclusion and for this reason no defense was made out and no question for the jury arose with respect to the matter.

The defendant requested an instruction, number two, reciting, among other things, that if Payne solicited defendant to act as his agent for the window fasteners, etc., and presented the paper for his signature, which Payne represented as being simply a contract to act as agent by such Poplin and not a promissory note, etc., etc., and defendant Poplin was not guilty of any negligence, etc., etc., the finding should be for the defendant. This instruction was properly refused; first, for the reason there was no evidence in the record that Payne solicited defendant to act as agent for the window fasteners, etc., and it was therefore predicated upon a surmise and not upon facts in the case; and it was properly refused, secondly, for the reason that it submitted the question of defendant's negligence in signing the note to the jury when in truth his negligence was so culpable as to place it within the realm of matters about which reasonable minds could not differ, and was therefore not a question for the jury.

Defendant requested and the court refused an in-

struction in substance, that if the jury found at the time Poplin signed the note he was unable to read and his son was a youth and ignorant of the legal distinction between promissory notes and other forms of contracts or of the legal force and effect of either forms of contract, that he read and understood very imperfectly the meaning and force of the technical language used in framing contracts and that no person was present or convenient competent to explain or read the writing to the defendant, etc., they might take such facts into consideration in determining whether the defendant was guilty of negligence in signing the note. The instruction was properly refused for the reason there is no evidence in the record the youth was ignorant of the distinction referred to, that he was unable to read and explain to his father that it was an undertaking for money that he was about to sign, etc. The evidence in this respect merely shows that the boy could read and write; that he signed his father's name thereto at his instance and request. The boy himself was not placed upon the stand and the jury did not even have his conduct as a witness before them so as to be able to pass upon the degree of intelligence which he possessed. The instruction was further properly refused because it directed the jury that these matters might be considered in determining the defendant's negligence, when in truth, the entire record points his negligence to be as hereinbefore indicated.

The judgment was for the right party and should be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.