# WALKER VS. EBERT.

*Bills and Notes — Evidence to invalidate Note.*

1. A note to which the maker's signature has been procured by false representations as to the character of the paper itself, he being ignorant of its true character and having no intention to sign such a paper, and being guilty of no negligence in doing so, is void even in the hands of a holder for value, before maturity and without notice.

2. In an action on a negotiable promissory note by one who claims as such holder, where that defense is properly set up in the answer, the defendant should be permitted to show that at the time he signed the note he was unable to read or write the English language, in which it was written, and that it was then represented to him and he believed it to be a contract of an entirely different character, and that he never delivered the instrument to any one.

3. In such a case, the defendant, never having intended to sign such an instrument, must be regarded, at least in the absence of evidence of negligence on his part, as never having executed it.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action on a promissory note, by a holder, who claims to have purchased it for full value, before maturity. The answer alleges that the defendant is a German by birth and education, and unable to read and write the English language; that on the day of the date of the supposed note, the payees thereof, by their duly authorized agent, falsely and fraudulently represented to him, with intent to swindle, cheat and defraud him, that they would appoint him sole agent for his town of a certain patented machine, for ten years, and would deliver to him one of said machines free of cost, except freight, and he should receive fifty per cent. of all profits on his sales; and he accepted such agency upon those terms; and that the payees, by their said agent, then presented to him to sign in duplicate, an instrument, partly written and partly printed, which he was unable to read, and which such agent falsely and fraudulently represented to be simply a contract embracing the terms orally agreed upon between them, and he, believing it to be so, signed his name to it in duplicate; that such payees never delivered the machine promised, and never intended to do so, and defendant never sold any.

On the trial, the defendant offered to prove by his own testimony the facts so alleged by him relative to his signature to the note in suit, and that he never delivered it to any one; which evidence was objected to by the plaintiff, and ruled out by the court; and there being no further evidence, the court directed a verdict for the plaintiff. A motion for a new trial was overruled and judgment entered on such verdict, from which the defendant appeals.

*Coleman & Thorp*, for appellant, claimed that the maker of a note had a right to set up and prove the facts alleged in the answer in this case, as a defense to an action by a *bona fide* purchaser, citing *Whitney v. Snyder*, 2 Lansing, 477; *Foster v. McKinnon*, 38 Law Jour., N. S., 310; Albany Law Jour., Jan. 7, 1871, p. 3 and cases cited.

*Gillet, Pier & Bass,* for respondents.
[No brief on file.]

DIXON, C. J.   The defendant, having properly alleged the same facts in his answer, offered evidence and proposed to prove by himself as a witness on the stand, that at the time he signed the supposed note in suit, he was unable to read or write the English language; that when he signed the same, it was represented to him as, and he believed it was, a certain contract of an entirely different character, which contract he also offered to produce in evidence; that the contract offered to be produced was a contract appointing him, defendant, agent to sell a certain patent right, and no other or different contract, and not the note in question; and that the supposed note was never delivered by the defendant to any one.   It was at the same time stated that the defendant did not claim to prove that the plaintiff did not purchase the supposed note before maturity and for value.   To this evidence the plaintiff objected, and the objection was sustained by the court, and the evidence excluded, to which the defendant excepted; and this presents the only question.

We think it was error to reject the testimony.   The two cases cited by counsel for the defendant (*Foster v. McKinnon,* L. R., 4 C. P., 704, and *Whitney v. Snyder,* 2 Lansing, 477) are very clear and explicit upon the point, and demonstrate, as it seems to us, beyond any rational doubt, the invalidity of such paper, even in the hands of a holder for value, before maturity, without notice.   The party whose signature to such paper is obtained *by fraud as to the character of the paper itself,* who is ignorant of such character, and has no intention of signing it, and who is guilty of no negligence in affixing his signature, or in not ascertaining the character of the instrument, is no more bound by it than if it were a total forgery, the signature included.

The reasoning of the above cases is entirely satisfactory and

Walker vs. Ebert.

conclusive upon this point. The inquiry in such cases goes back of all questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity and without notice. It challenges the origin or existence of the paper itself; and the proposition is, to show that it is not in law or in fact what it purports to be, namely, the promissory note of the supposed maker. For the purpose of setting on foot or pursuing this inquiry, it is immaterial that the supposed instrument is negotiable in form, or that it may have passed to the hands of a *bona fide* holder for value. Negotiability in such cases pre-supposes the existence of the instrument as having been made by the party whose name is subscribed; for, until it has been so made and has such actual legal existence, it is absurd to talk about a negotiation, or transfer, or *bona fide* holder of it, within the meaning of the law merchant. That which, in contemplation of law, never existed as a negotiable instrument, cannot be held to be such; and to say that it. is, and has the qualities of negotiability, because it assumes the form of that kind of paper, and thus to shut out all inquiry into its existence, or whether it is really and truly what it purports to be, is *petitio principii*—begging the question altogether. It is, to use a homely phrase, putting the cart before the horse, and reversing the true order of reasoning, or rather preventing all correct reasoning and investigation, by assuming the truth of the conclusion, and so precluding any inquiry into the antecedent fact or premise, which is the first point to be inquired of and ascertained. For the purposes of this first inquiry, which must be always open when the objection is raised, it is immaterial what may be the nature of the supposed instrument, whether negotiable or not, or whether transferred or negotiated, or to whom or in what manner, or for what consideration or value paid by the holder. It must always be competent for the party proposed to be charged upon any written instrument, to show that it is not his instrument or obligation. The principle is the same as where

instruments are made by persons having no capacity to make binding contracts; as, by infants, married women, or insane persons; or where they are void for other cause, as, for usury; or where they are executed as by an agent, but without authority to bind the supposed principal. In these and all like cases, no additional validity is given to the instruments by putting them in the form of negotiable paper. See *Veeder v. Town of Lima*, 19, Wis., 297 to 299, and authorities there cited. See also *Thomas v. Watkins*, 16 Wis., 549.

And identical in principle, also, are those cases under the registry laws, where the *bona fide* purchaser for value of land has been held not to be protected when the recorded deed under which he purchased and claims, turns out to have been procured by fraud as to the signature, or purloined or stolen, or was a forgery, and the like. See *Everts v. Agnes*, 4 Wis., 343, and the remarks of this court, pp. 351–353, inclusive.

In the case first above cited, the defendant was induced to put his name upon the back of a bill of exchange by the fraudulent representation of the acceptor, that he was signing a guaranty. In an action against him as endorser, at the suit of a *bona fide* holder for value, the Lord Chief Justice, BOVILLE, directed the jury that, "If the defendant's signature to the document was obtained upon a fraudulent representation that it was a guaranty, and the defendant signed it without knowing that it was a bill, and under the belief that it was a guaranty, and if he was not guilty of any negligence in so signing the paper, he was entitled to the verdict;" and this direction was held proper. In delivering the judgment of the court upon a rule *nisi* for a new trial, BYLES, J., said: "The case presented by the defendant is, that he never made the contract declared on; that he never saw the face of the bill; that the purport of the contract was fraudulently misdescribed to him; that when he signed one thing, he was told and believed he was signing another and an entirely different thing; and that his mind never went with his act."

"It seems plain on principle and on authority, that if a blind man, or a man who cannot read, or for some reason (not implying negligence), forbears to read, has a written contract falsely read over to him, the reader misreading to such a degree that the written contract is of a nature altogether different from the contract pretended to be read from the paper, which the blind or illiterate man afterwards signs, then, at least, if there be no negligence, the signature so obtained is of no force; and it is invalid, not merely on the ground of fraud, where fraud exists, but on the ground that the mind of the signer did not accompany the signature; in other words, that he never intended to sign, and therefore, in contemplation of law, never did sign the contract to which his name is appended." And again, after remarking the distinction between the case under consideration and those where a party has written his name upon a blank piece of paper, intending that it should afterwards be filled up, and it is improperly so filled, or for a larger sum, or where he has written his name upon the back or across the face of a blank bill-stamp, as endorser or acceptor, and that has been fraudulently or improperly filled, or in short, where, under any circumstances, the party has voluntarily affixed his signature to commercial paper, *knowing what he was doing, and intending the same to be put in circulation as a negotiable security,* and after also showing that in all such cases the party so signing will be liable for the full amount of the note or bill, when it has once passed into the hands of an innocent endorsee or holder, for value before maturity, and that such is the limit of the protection afforded to such an endorsee or holder, the learned judge proceeded:

"But, in the case now under consideration, the defendant, according to the evidence, if believed, and the finding of the jury, never intended to endorse a bill of exchange at all, but intended to sign a contract of an entirely different nature. It was not his design, and, if he were guilty of no negligence, it was not even his fault, that the instrument he signed turned out to be a bill of exchange. It was as if he had written his name on

a sheet of paper for the purpose of franking a letter, or in a lady's album, or an order for admission to Temple Church, or on the fly-leaf of a book, and there had already been, without his knowledge, a bill of exchange or a promissory note payable to order inscribed on the other side of the paper. To make the case clearer, suppose the bill or note on the other side of the paper in each of these cases to be written at a time subsequent to the signature, then the fraudulent misapplication of that genuine signature to a different purpose would have been a counterfeit alteration of a writing with intent to defraud, and would therefore have amounted to a forgery. In that case the signer would not have been bound by his signature, for two reasons—first, that he never in fact signed the writing declared on, and, secondly, that he never intended to sign any such contract."

"In the present case, the first reason does not apply, but the second does apply. The defendant never intended to sign that contract, or any such contract. He never intended to put his name to any instrument that then was or thereafter might become negotiable. He was deceived, not merely as to the legal effect, but as to the *actual contents* of the instrument."

The other case first above cited, *Whitney v. Snyder*, was in all respects like the present, a suit upon a promissory note by the purchaser before maturity, for value, against the maker; and the facts offered to be proved in defense were the same as here; and it was held that the evidence should have been admitted.

In *Nance v. Larey*, 5 Ala., 370, it was held that where one writes his name on a blank piece of paper, of which another takes possession *without authority therefor*, and writes a promissory note above the signature, which he negotiates to a third person, who is ignorant of the circumstances, the former is not liable as the maker of the note to the holder. In that case the note was written over the signature by one Langford, and by him negotiated to the plaintiff in the action, who sued the defendant as maker. COLLIER, C. J., said: "The making of the

note by Langford was not a mere fraud upon the defendant; it was something more. It was quite as much a forgery as if he had found the blank, or purloined it from the defendant's possession. If a recovery were allowed upon such a state of facts, then every one who ever indulges in the idle habit of writing his name for mere pastime, or leaves sufficient space between a title and his subscription, might be made a bankrupt by having promises to pay money written over his signature. Such a decision would be alarming to the community, has no warrant in law, and cannot receive our sanction."

And in *Putnam v. Sullivan*, 4 Mass., 54, Chief Justice PARSONS said: "The counsel for the defendants agree that, generally, an endorsement obtained by fraud will hold the endorsers according to the terms of it, but they make a distinction between the cases, where the endorser, through fraudulent pretenses, has been induced to endorse the note he is called on to pay, *and where he never intended to endorse a note of that description, but a different note and for a different purpose.* Perhaps there may be cases in which this distinction ought to prevail. *As, if a blind man had a note falsely and fraudulently read to him, and he endorsed it, supposing it to be the note read to him.* But we are satisfied that an endorser cannot avail himself of this distinction, but in cases where he is not chargeable with any laches or neglect, or misplaced confidence in others." See also 1 Parsons on Notes and Bills, 110 to 114, and cases cited in notes.

The judgment below must be reversed, and a *venire de novo* awarded.

*By the Court.*—It is so ordered.

NOTE.—The importance of the question presented in this case, and the small number of direct adjudications to be found, seem to justify us in referring to some additional authorities, the reports of which have come to hand since the foregoing opinion was written. In *Taylor v. Atchinson*, 54 Ill., 196, the transaction was of the very same kind as in our own case, and the same rule of law was applied by the court. It is a decision fully in point. *Wait v. Pomeroy*, 20 Mich., 494 (4 Am. R., 395), and *Burson v. Huntington*, 21 Mich., 415 (4 Am. R., 497), are also strongly analogous cases,

which fully sanction the principle. The case of *Douglas v. Maiting*, 29 Iowa, 498 (4 Am. R., 238), which at first sight might seem to be in conflict, is in reality not so, since, upon the facts stated in the answer, or assumed by the court, the alleged maker of the note was guilty of "culpable carelessness" and "gross negligence" in having affixed his signature to the instrument. And such, also, was the ground of decision in *Garnard v. Haddan*, 67 Pa. St., 82 (5 Am. R., 412). See also *Calkins v. Whisler*, 29 Iow, 495 (1 Am. R., 236.)    Dixon, C. J.