DANIEL E. SOPER v. PETER PECK.

*Promissory note—Fraud on maker—General issue.*

Where the execution of a promissory note is denied on oath, the general issue in an action thereon will admit evidence· tending to show that defendant made no such contract as was counted upon, and that he was fraudulently got to sign the note when he thought he was signing something else.

One who has been tricked into signing a promissory note will not be liable upon it, unless his own negligence was so gross as to preclude his defending against a bona fide purchaser of the paper.

Error to Newaygo.   (Fuller, J.)   Oct. 9.—Oct. 24.

ASSUMPSIT.   Defendant brings error.   Affirmed.

*W. D. Leonardson* and *A. G. Day* for appellant.   In an action on a note the fact that it was void in its inception may be shown under the general issue (1 Ch. Pl. 476; *Young v. Rummell* 2 Hill 478; *Boyd v. Weeks* 5 Hill 393; *Gleason v. Clark* 9 Cow. 57; *Fleming v. Niagara* 12 Wend. 246; *Niles v. Totman* 3 Barb. 594; *Edson v. Weston* 7 Cow. 278; *Payne v. Cutler* 13 Wend. 605; *Hubbell v. Ames* 15 Wend. 372; *Runyan v. Nichols* 11 Johns. 547; *Sill v. Rood* 15 Johns. 231; *Gibbs v. Linabury* 22 Mich. 479; *Anderson v. Walter* 34 Mich. 113) without notice, unless the matter of defence arose after the execution of the note : *Gleason v. Clark* 9 Cow. 57.

*George Luton* for appellee, cited, as to the rights of one who has taken a note in good faith and for value without any notice as the facts and circumstances under which the note was given: *Goodman v. Simonds* 20 How. 343; *Chapman v. Rose* 56 N. Y. 137; *Shreeves v. Allen* 79 Ill. 553; *Moorehead v. Gilmore* 77 Penn. St. 118; *Comstock v. Hannah* 76 Ill. 530; *Murray v. Lardner* 2 Wall. 110; *Goodman v. Harvey* 4 Ad. & El. 870.

COOLEY, J.   The plaintiff counts upon a promissory note

purporting to be made by defendant, April 2, 1881, for the sum of one hundred and fifteen dollars, payable to H. S. Hayes or bearer three months from date. The defendant pleaded the general issue and filed an affidavit denying the execution of the note.

On the trial, the plaintiff gave evidence tending to prove that the signature to the note was in defendant's handwriting. He also showed that he bought the note of the payee, who was a stranger to him, before it fell due, and that the purchase was in good faith and for value.

The defendant rebutted the evidence as to handwriting, and he also, against the objection of the plaintiff, was allowed to testify as follows:   That on the 24th day of March, 1881, a stranger came to his house and said he wanted to make him an agent to sell wagon-tongue supporters; that defendant did not want to bother with it at all; that the man told him it would be no bother—that they would sell themselves; that he would send him twenty-four and defendant could have one for his own use; that as fast as he sold them he should send the company one-half of the money; that defendant then told him that under such consideration he didn't know but what he would do it; that the goods should be sent to Alleyton ; that the man gave him the paper making him their agent, and that he signed an order for the goods; that was the conversation with that man; that on the second day of April another man came to his house and says, "Peck, I have come to finish up this agency business for them wagon-tongue supporters"; this was about noon ; he said he wished he had nothing to do with it at all, for he hadn't got time ; he said "It won't bother you at all," and said the goods were already at Alleyton ; the man would not go into the house ; he said he was in a hurry to go to Newaygo to take the train, for he had to go to Detroit that night; he took a little book, the same as a note-book, with purple paper— very light, thin paper—and says, "This is nothing more than just a statement that I want to send to the company to let them know that you are their lawful agent ;" that it was a dark day and he could not see to read without glasses ; that

he was a poor scholar and cannot read writing without great difficulty at any time, and he didn't have his glasses, and so he signed it; and then the man went away; that he only signed one paper on the 24th day of March, and that was the order for the goods; that he only signed one paper on the 2nd day of April, 1881, and he supposed that was the paper showing that he was the authorized agent for the sale of the supporters, and that the paper was simply to show the company that defendant had consented to act as their agent; that nothing was said about a note, or his signing any note; that he went to Alleyton on Tuesday following after the goods and found none there, and he went once or twice afterward and found none; that nothing was said on the 2nd day of April about giving a note; that he did not intend to sign or execute a note on that day.

On cross-examination his testimony tended to show that he ordered twenty-four wagon-tongue supporters; that the price of them was five dollars apiece; that on the 24th day of March the first man asked him to send an order to the company for 24 wagon-tongue supporters, and that he did it; that a different man came on the 2nd of April, whom he did not know; that day the man gave him his signature to the order for the supporters; that he signed the paper in an ordinary sized note-book; it was opened out like a note-book; that he sat down by the gate-post and signed it, and the man said nothing to him while he was signing it, and that he took the book in his own hands when he signed it; that he could have went to the house and got his spectacles and examined the paper if he wanted to; that he supposed it was just as the man represented, and not necessary; that there was more writing and printing on than a note; the man handed him the book like a note-book, and a pen, and then he went and wrote his name to the paper; that the man said he would come around in three months and take back all the supporters not sold.

The objection made to this evidence was that it was not warranted by the issue made; but this was a mistake. The general issue had been interposed, and whatever tended to

show that no such contract as was counted upon was made by the defendant was admissible under it. The exception of a denial of the signature is made by the statute [Comp. L. §§ 5310, 5363] but that was met by the defendant's affidavit. It cannot be disputed that defendant's evidence tended to show that he had had a fraud practiced upon him, and that very probably he had been made to put his name to a note when he supposed he was signing something different. If the jury believed this, he was entitled to their verdict, unless his negligence was so gross as to preclude his making the defense as against a bona fide purchaser of the paper. *Gibbs v. Linabury* 22 Mich. 479; *Anderson v. Walter* 34 Mich. 113. The judge submitted the question of negligence to the jury, as we think, with entire fairness.

The jury returned a verdict for defendant, and though several errors are assigned, we think we have spoken of all which require notice.

The judgment must be affirmed with costs.

The other Justices concurred.