KELLER, Appellant, vs. RUPPOLD, Respondent.

*November 11—November 28, 1902.*

*Bills and notes: Fraud:* Bona fide *purchaser.*

A note to which the maker's signature was procured by false representations as to the character of the paper itself, he being ignorant of its true character and having no intention to sign such a paper, and being guilty of no negligence in doing so, is void, even in the hands of a purchaser for value, before maturity, and without notice. *Keller v. Schmidt,* 104 Wis. 596, distinguished.

APPEAL from a judgment of the circuit court for Walworth county: FRANK M. FISH, Circuit Judge. *Affirmed.*

This is an action to recover the amount due on a promissory note purported to be executed by the defendant September 12, 1898, for $137, and interest at eight per cent., payable January 1, 1899, at the express office in Delavan, Wisconsin, to the order of J. D. Flemming, and by him indorsed in blank before maturity, and delivered to the plaintiff, so indorsed, in the due course of business and for a valuable consideration, before due and before the commencement of this action. The verified answer of the defendant denies the making, execution, and delivery of the note, and alleges, in effect, that he was induced by false and fraudulent representations to sign what was so represented to be, and what he at the time supposed to be,—a contract for a lightning

rod, at an expense of $2, and a policy of insurance against loss by lightning.

Upon the issues so joined, the cause was tried, and at the close of the trial the jury returned a special verdict to the effect: (1) That the note mentioned in the complaint was signed by the defendant, and delivered to Flemming, the payee; (2) that the note was indorsed by Flemming, and the plaintiff is the owner thereof, and (3) the same is due and unpaid; (4) that the plaintiff became the lawful owner of the note before maturity, in due course of business, in good faith, and for a valuable consideration; (5) that the defendant was induced to sign the note in question by reason of false and fraudulent representations of the payee or his agents as to the character of the paper by him signed; (6) that at the time of the signing of the note the defendant did use ordinary care and caution to ascertain the exact nature of the paper by him signed at that time; (7) that they assessed the plaintiff's damages at $156.18. From the judgment entered upon such verdict in favor of the defendant, dismissing the action and for costs, the plaintiff appeals.

For the appellant the cause was submitted on the brief of *Jos. J. Lyon,* attorney, and *Simon Gillen,* of counsel.

For the respondent there was a brief by *C. B. Sumner,* attorney, and *Sanborn, Luse & Powell,* of counsel, and oral argument by *John B. Sanborn.*

CASSODAY, C. J. The important question presented is whether such answers of the jury to the fifth and sixth questions of the special verdict are supported by the evidence. The only witness as to the circumstances under which the note was signed and delivered· is the defendant himself. According to the effect of his testimony, he and his wife were both illiterate,—could read and write but very little English, and could not understand the meaning of reading and writing when shown to them; that September 12, 1898, a Ger-

man stranger came to his house, claiming that he had a new kind of lightning rod, and wanted to put the same on his house as a sample to advertise; that his father had left him $60,000, and owned the company at Burlington, and could afford to put up such sample on small houses at a cost of only $2; that the defendant could earn the same a few days later by riding around with him, and speak a good word for the rods; that the defendant would have to sign a paper, so he would know upon what houses the rods had been put; that the stranger talked German nice, and he believed what he said; that he signed two papers or contracts,—one for the stranger and the other for himself; that the stranger waved his hat, and the other fellows came from the road and put up the rod; that before signing the contract the stranger told him that he was to sign a policy, so that, if the house burned down, he would get $1,000 from the Burlington Company; that the stranger showed him the paper and the policy; that, after putting up the rod, they called him up to the wagon, and said he was to sign the policy, and so he signed it; that he was going to call his neighbor, but they said it was not necessary; that they were in a hurry; that he did not know what was in the paper he signed; that they called it a policy, and he believed what they told him,—that the paper was a policy of insurance,—and, relying upon that statement, he signed the paper; that they left a copy of the paper he signed as an insurance policy with him; that it turned out to be a copy of the note in question; that, after the stranger had left, the defendant showed what he up to that time had supposed to be an insurance policy to his neighbor, who told him that it was a note; that during the time the strangers were at the defendant's place there was not a word said by anyone about giving a promissory note, and no such word was mentioned.

The fraud practiced upon the defendant as to the character of the paper by him signed is undisputed. Flemming, the

payee of the note, and all of the three persons who co-operated in perpetrating the fraud, were conspicuously absent upon the trial. The plaintiff testified to the effect that he lived at Sheboygan, and was a pawnbroker, engaged in making loans and buying notes, etc., and had been in such business for ten or twelve years; that he did not get the note of Flemming, the payee, but of H. Simpson, who lived at Burlington, and was in the wholesale and retail lightning rod business, and that he paid him therefor $124, December 7, 1898; that the note bore the indorsement of J. D. Flemming at the time he purchased the same, and that he did not know Flemming's business. The evidence is sufficient to sustain the answer of the jury to the sixth question submitted, and the undisputed evidence is sufficient to sustain the answer of the jury to the fifth question submitted. It follows that there was no error in refusing to set aside the answers to those questions; much less in refusing to order judgment in favor of the plaintiff.

The question recurs whether, under the findings of the jury and the undisputed evidence, the plaintiff is entitled to the protection of a *bona fide* holder of commercial paper for value and before maturity. Of course, there are numerous cases where such *bona fide* holder is entitled to such protection. 1 Daniel, Neg. Inst. § 848. "But," that learned author observes, "in all these cases the party intended to sign and put in circulation the instrument as a negotiable security. Where this is the case, he is bound to know that he is furnishing the means whereby third parties may be deceived, and innocently led to part with their property on the faith of his signature, and in ignorance of the true state of facts." Id. Thus, in an English case, there cited, "the defendant was induced to put his name upon the back of a bill of exchange by the fraudulent representation of the acceptor that he was signing a guaranty. In an action against him as indorser at the suit of a *bona fide* holder for value, the jury were directed

that: 'If the defendant's signature to the document was obtained upon a fraudulent representation that it was a guaranty, and the defendant signed it without knowing that it was a bill, and under the belief that it was a guaranty, and if he was not guilty of any negligence in so signing the paper, he was entitled to the verdict.' Held, a proper direction." *Foster v. Mackinnon*, L. R. 4 C. P. 704. This court has held that: "A note to which the maker's signature has been procured by false representations as to the character of the paper itself, he being ignorant of its true character and having no intention to sign such a paper, and being guilty of no negligence in doing so, is void, even in the hands of a holder for value, before maturity, and without notice." *Walker v. Ebert*, 29 Wis. 194. To the same effect, *Kellogg v. Steiner*, 29 Wis. 626; *Butler v. Carns*, 37 Wis. 61; *Dowagiac Mfg. Co. v. Shroeder*, 108 Wis. 110, 84 N. W. 14; *Whitney v. Snyder*, 2 Lans. 477; *First Nat. Bank v. Lierman*, 5 Neb. 247; *Puffer v. Smith*, 57 Ill. 527; *Vanbrunt v. Singley*, 85 Ill. 281; *Mitchell v. Tomlinson*, 91 Ind. 167. The ruling of this court in *Walker v. Ebert, supra,* is sanctioned by the textwriter mentioned. 1 Daniel, Neg. Inst. § 849. That ruling is applicable to the case at bar. This case is clearly distinguishable from the late case of *Keller v. Schmidt*, 104 Wis. 596, 80 N. W. 935. We must hold that the plaintiff in the case at bar is not entitled to such protection of a *bona fide* purchaser.

*By the Court.*—The judgment of the circuit court is affirmed.