KLOSTERHUBER and wife, Respondents, vs. WISCONSIN STATE BANK, Appellant.

*April 2—April 30, 1935.*

For the appellant there was a brief by *Paul, Ebert, Paul & Gobel* of Milwaukee, and oral argument by *Harold H. Paul.*

*Martin J. Price* of Milwaukee, for the respondents.

NELSON, J. There is little dispute as to the material facts. On January 28, 1933, the plaintiffs were the owners of certain real estate upon which they resided. They desired to borrow $1,000 and to secure such loan by giving a mortgage on their property. Such desire had theretofore been communicated to one Theodore Richter, with whom the plaintiffs were, well acquainted and in whom they had confidence. Mr. Richter promised that the boys (evidently referring to his sons) would come up with an application. On January 28, 1933, Walter Richter, one of his sons, appeared at the plaintiff's home with certain instruments which he represented to be an application for the mortgage. They were in fact a note for $1,000 and a real-estate mortgage. The note and mortgage were signed by the plaintiffs relying upon the representations made to them that the instruments were an application for a mortgage. Neither the note nor the mortgage was read to the plaintiffs. They did not ask that the instruments be read to them before they signed them. At the time the instruments were signed, no one was present except the plaintiffs and Walter Richter. Walter Richter did not testify at the trial.

On January 28, 1933, Charles Klosterhuber was eighty-one years of age. He had but one eye, the vision of which was greatly impaired. He was quite deaf and physically feeble. He was born in Germany. His education was limited, and he could neither read nor write English. His condition was such that he could not understand the nature and import of the note and mortgage.

Frances Klosterhuber was seventy-five years of age at the time. She, too, was born and brought up in Germany, where she received but a scant education. She had had almost no business experience. Her physical condition was good, but her eyesight was poor and required the use of glasses. She could read English print with some difficulty if it was, fairly large. She did not read the mortgage, but did read the large print on the note which embodied the ordinary promise to pay. Both Mr. and Mrs. Klosterhuber testified that the instruments presented to them for their signatures were represented to be an application for a mortgage; that they relied upon what Walter Richter told them, and that they signed them believing that they constituted only an application for a mortgage loan. There was evidence to the effect that, when the mortgage was presented for signing, the lower one-fourth of the instrument was folded under so that the word "MORTGAGE" which appeared in large type on that part of the instrument was not observable. Mrs. Klosterhuber delivered her abstract and insurance policies to Walter Richter. Before departing, he left with the plaintiffs the following receipt:

"Received from Mr. and Mrs. Klosterhuber mortgage and note to the amount of $1,000 for the purpose of securing a loan for such amount. Interest rate 6% and to be paid semi-annually. Matters will be given the earliest possible attention."

Mrs. Klosterhuber admitted reading this receipt, but testified that she believed that it merely related to an application for a mortgage and the abstract and insurance policies.

The mortgage was apparently completed at the Richter offices by having a second witness unknown to the plaintiffs sign it and by having the acknowledgment completed. The note and mortgage were thereafter delivered to the defendant bank by Mr. Richter as a substitute for another mortgage which the bank had theretofore held as collateral security to a note made by him. The court found the facts substantially as stated, and concluded that the note and mortgage were procured from the plaintiffs by fraud and misrepresentation as to the nature of the instruments; that the plaintiffs did not know the nature of the instruments; that they could not have obtained such knowledge by the use of ordinary care; that said instruments were void in the hands of the defendant, even though the defendant parted with value therefor by surrendering other security and did not have actual knowledge of the fraud.

The defendant contends that the court erred in finding that the plaintiffs did not know the nature of the instruments signed by them and in further finding that the plaintiffs could not have obtained knowledge of the nature of such instruments by the use of ordinary care.

This action is ruled by sec. 116.60, Stats., which reads:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud *and the title of such person is absolutely void when such instrument or signature was so procured from a person who did not know the nature of the instrument and could not have obtained such knowledge by the use of ordinary care.*"

The italicized portion of the statute was added to sec. 55 of the Uniform Negotiable Instruments Act before that act was adopted by the legislature in 1899 (ch. 356). Wiscon-

sin is the only state that has incorporated that language into the Uniform Negotiable Instruments Act. The legislature intended thereby to preserve the well-established common law of this state. The following cases show how firmly that law was established in this state prior to the adoption of the uniform act. *Walker v. Ebert,* 29 Wis. 194 (the leading case) ; *Kellogg v. Steiner,* 29 Wis. 626; *Butler v. Carns,* 37 Wis. 61; *Griffiths v. Kellogg,* 39 Wis. 290; *Bowers v. Thomas,* 62 Wis. 480, 22 N. W. 710; *Keller v. Ruppold,* 115 Wis. 636, 92 N. W. 364. It is clear that the legislature merely enacted into law the doctrine of these cases. *Aukland v. Arnold,* 131 Wis. 64, 111 N. W. 212.

The law is plain, but its application to the facts adduced presents some difficulty. A person who would successfully attack an instrument signed by him which has passed into the hands of a purchaser for value and without notice, must show that the instrument or his signature thereto was procured by fraud; that he did not know the nature of the instrument signed by him and could not have obtained such knowledge by the use of ordinary care. It is conceded by the defendant that the note and mortgage were represented by Walter Richter to be an application for a mortgage. But it earnestly contends that Mrs. Klosterhuber, having read the large print of the note, knew the nature of that instrument and that Mr. Klosterhuber should have asked her or Walter Richter to read the instrument; that Mrs. Klosterhuber should have known the nature of the instruments because she could read the large print of the note and the large print of the mortgage, and that Mr. Klosterhuber could have obtained such knowledge if he had insisted that the instruments be read by either Mrs. Klosterhuber or Walter Richter. One cannot defend in such a situation without showing that he exercised ordinary care to obtain knowledge of the true character of the instrument. Whether one is

guilty of negligence in signing an instrument is ordinarily a question of fact. *Butler v. Carns, supra; Walker v. Ebert, supra; Bowers v. Thomas, supra.*

While the defendant makes a strong lawyerlike argument based upon the cold record, we cannot say that the findings of fact assailed should be disturbed, because against the great weight and clear preponderance of the evidence. A trial court, in cases like this, is in a much better position than this court to weigh the testimony to get a clear understanding of the whole situation and correctly appraise the physical infirmities, capacities, or lack of learning or business sagacity, of aged, unschooled, and inexperienced persons.

Under the undisputed facts, there is no doubt that at the time Charles Klosterhuber signed the instruments he was an old feeble man with both eyesight and hearing impaired; that he could neither read nor write English, nor understand, except as he was told in simple language, the nature of the instruments. He was told by Walter Richter that only an application for a mortgage loan was being signed. It is our opinion that the trial court was clearly justified in finding that Charles Klosterhuber met the burden of the statute. In *Aukland v. Arnold, supra,* it was held that under sec. 116.60 (then sec. 1676—25), the title of a person who negotiates an instrument is absolutely void as to all of the signers when the instrument *or any signature thereto* has been procured by fraudulently representing its character, if the person so deceived could not have obtained knowledge of its character by the use of ordinary care. In that case several promissory notes signed by a number of makers were held to be void because at least the signature of one of the makers had been procured by fraudulent misrepresentation, and because the facts were such as to support the conclusion that such signer could not have obtained knowledge of its character by the use of ordinary care. Under the law of that case, if the note and mortgage are void as to Mr. Klosterhuber they are void as to Mrs. Klosterhuber.

Trial courts should scrutinize evidence adduced in support of attacks made upon written instruments which unquestionably have been signed by the attacking parties to the end that the statute may not become an instrument of injustice and wrong. When, however, the facts adduced meet the requirements of the statute, the law must be applied.

*By the Court.*—Judgment affirmed.