COHEN et al. v. UNITED STATES.

No. 10867.

United States Court of Appeals
Sixth Circuit.

Nov. 30, 1949.

Sidney G. Kusworm, Jr., Dayton, Ohio, Sidney G. Kusworm, Dayton Ohio, on the brief, for appellant.

Ray J. O'Donnell, Columbus, Ohio, Ray J. O'Donnell, Columbus, Ohio, on the brief, for appellee.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appellants were convicted and sentenced in the United States District Court under an indictment for violation of § 1731(a), Title 12, U.S.C.,[1] the pertinent portion of which reads as follows:

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by the said Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of the said Administration under this chapter, (makes, passes, utters, or publishes, or causes to be made, passed, uttered, or published any statement, knowing the same to be false, * * *) * · * * shall be punished by a fine * * * or by imprisonment * * * or both."

Appellant Cohen was indicted in the first six counts, and appellant Escovitch in the eight counts of the indictment. In counts 1, 3 and 5 both appellants are charged, and in count 7 Escovitch is charged with having made, passed, uttered and published, or having caused to be made, passed, uttered and published a document entitled "FHA Title I Credit Application," for the purpose of obtaining a loan from First Discount Corporation, Dayton, Ohio (in counts 1, 3 and 5), and from Commercial Credit Company, Dayton, Ohio (in count 7), with the intent that such loan should be offered to the FHA for insurance, and for the purpose of influencing the action of the FHA, knowing that such document was false in that the signatures were ob-

---

1. 1948 Revised Criminal Code, 18 U.S.C.A. § 1010.

tained by fraud and misrepresentation, and none of the signers intended to apply for an advance of credit. It was charged that the document was submitted to the First Discount Corporation or Commercial Credit Company without the knowledge or consent of the signers.

In counts 2, 4, and 6, both appellants are charged and in count 8 Escovitch is charged with having made, passed, uttered and published an "FHA Promissory Note" for the purpose of obtaining a loan from First Discount Corporation and Commercial Credit Company, with intent that such loan should be offered to the FHA for insurance, and for the purpose of influencing the action of the FHA, knowing the notes to be false in that the signatures were obtained by false and fraudulent representations. It was charged that at the time of signing the parties did not know that the papers they signed were promissory notes.

After a trial in which appellants offered no evidence, the jury found each of the appellants guilty as charged in the various counts of the indictment. The charges arise out of deals negotiated by appellants for re-siding the homes of four separate families. Appellants concede that they used the same procedure in the Ray, Willett, Hager and Propolski transactions. The Ray transaction will be described in some detail.

In the early part of 1946 Escovitch called at the home of Mr. and Mrs. Elmo Ray, in Dayton, Ohio, and told them that he had a plan by which their home could be re-sided without cost to them. Escovitch stated that he wanted to use Ray's home for advertisement and display. Ray replied that he did not care for siding, but was assured by Escovitch that the re-siding of his house would cost him nothing; that the company represented by appellants would put the siding on and all that Mr. and Mrs. Ray had to do was to show the siding to prospective customers. Escovitch told the Rays that they would receive a check for $25 for each prospect who purchased a siding job. It was estimated that the cost of re-siding the Ray home would be paid off in 13 weeks. Mr. and Mrs. Ray agreed to the proposition.

Meanwhile Cohen had come in. Appellants then produced some papers which they asked Mr. and Mrs. Ray to sign, stating that the purpose of the papers was "just to show that you are the man that is getting this job." Mr. and Mrs. Ray both testified that they were given no opportunity to read the papers, and saw only the line on which they signed. They filled in no blanks, nor did they authorize any one to fill in the blanks for them. The papers they actually signed were a credit application and a promissory note, each of which bore the initials "FHA" in large type at the head of the paper; but the Rays were not aware that they were signing either a note or a credit application, and did not intend to sign them. Within four or five days the work of re-siding the house was completed by the Dayton Construction Company, which several days thereafter secured the Rays' signatures to the FHA Title I Borrower's Completion Certificate.

The principal variation in the evidence of the separate transactions is that in the deal with Clifton Hager it was shown that Mr. Hager can not read and can write only his name. His wife started to read the papers when she signed them, but Cohen interrupted her and gave her an opportunity only to glance at the bottom of the page.

Appellants concede that none of the persons concerned in the four transactions knew the character of the papers that they were signing. One Abe Rosenthal, on behalf of the Dayton Construction Company, discounted three notes with the First Discount Corporation, and in each case remitted several hundred dollars to appellants. First Discount Corporation forwarded the notes to its home office in South Bend, Indiana, which filled out the usual loan reports and reported the loans to the FHA for insurance. The Propolski note was discounted by the Commercial Credit Company, and the same procedure was followed, the loan being reported to the FHA for insurance. None of the notes were paid and the FHA reimbursed the First Discount Corporation and the Commercial Credit Company for the amounts paid out by them.

Appellants contend that the statute does not apply to the transactions presented and that the indictment does not properly charge the alleged offense in that it does not inform appellants of the nature and cause of the accusations. They also contend that a verdict should have been directed on their behalf, on the ground that the evidence does not show the papers to be false, does not prove that appellants knew the papers were false, and does not prove the existence of the requisite purpose and intent.

■ These contentions can not be sustained. Appellants would have us construe § 1731(a) so that it should apply to and prevent only the passing of documents which are "false," in that they contain untrue statements concerning the financial status of the parties. Such a construction would result in a limitation neither expressed in the statute nor justified in light of the purpose of the FHA Act. Cf. Hartwell v. United States, 5 Cir., 107 F.2d 359. Uttering and publishing, in violation of § 1731(a), a paper purporting to be a promissory note, but in fact false because its signature was secured by fraud, constitute an offense against the Government and not merely a tort against the purported maker.

■ The indictment was drawn in the language of the statute, and each count supplies the specific information applicable to the particular transaction described therein. This is in general sufficient. Rule 7c, Federal Rules of Criminal Procedure, 18 U.S.C.A.; Sutton v. United States, 5 Cir., 157 F.2d 661; Mellor v. United States, 8 Cir., 160 F.2d 757; Robertson v. United States, 5 Cir., 168 F.2d 294.

Here it is contended, however, that the indictment does not inform appellants of the nature of the offense because it charges that the false signatures were obtained by fraud and misrepresentation, and the details of the fraud and misrepresentation are not set forth.

■ But this is not a prosecution for obtaining property or money under false pretenses, in which case the false pretenses must be set out specifically. The essence of the crime here is the uttering and publishing of false documents with intent to influence the FHA, Reass v. United States, 4 Cir., 99 F.2d 752. Cf. Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607, which construed the analogous section [§ 8 (a)] of the Home Owners' Loan Act, 12 U.S.C., § 1467(a).[2] The evidential allegations as to how the signatures were obtained were surplusage. The various offenses were fully and clearly charged since the counts of the indictment specified the time and place of each transaction, and the uttering and publishing, in each case, of a false credit application and note, particularly described, in violation of the statute.

Moreover, the verdict is supported by the uncontroverted facts. This was a case of intentional fraud in the inception of the contract. It was a deception of the kind that "destroys the validity of everything into which it enters," Nudd v. Burrows, Assignee, 91 U.S. 426, 440, 23 L.Ed. 286, and "vitiates the most solemn contracts." United States v. Throckmorton, 98 U.S. 61, 64, 25 L.Ed. 93; Johnson v. Waters, 111 U.S. 640, 667, 4 S.Ct. 619, 28 L.Ed. 547.

■ The credit application and note in each transaction were false ab initio. The circumstance that the usual details as to ownership, etc., were correctly set down is immaterial. Although the information supplied in the blanks was correct, the documents were intentionally untrue in that they represented the existence of obligations that had never been entered into and hence within the meaning of the statute were "false."

■ The fraud shown in this record induced the signers of the notes and credit applications to believe that the act they did was something other than it actually was. In such case the act of the defrauded person is void because he does not know he is doing, and does not intend to do the act. 5 Williston on Contracts, (Rev.Ed.) § 1488.

■ Nor does the contention that the parties deceived were negligent in not

2. 1948 Revised Criminal Code, 18 U.S.C.A. § 1014.

reading the papers relieve the appellants from criminal liability. The argument here is that the documents signed were not necessarily invalid. However, the conceded facts show that the fraud was intentional, was in the inception of the contracts, and that failure to read the documents was induced by appellants' false representations. In case of intentional fraud which causes a person to do an act which he neither intends to do nor knows that he is doing, the maker of a negotiable promissory note has frequently been held to be absolved from liability even as against a bona fide holder.[3]

But this is not a civil action, although in their argument that they should be absolved from liability under § 1731(a), appellants endeavor to set up a civil case between the signers of the notes and the FHA. This is a criminal action under a statute forbidding the uttering and publishing of false documents with intent to influence government action. The circumstance that the papers, if read, might not have been signed, is irrelevant. Under the uncontroverted facts appellants knew that the applications and notes were false. They deliberately secured signatures never intended to be placed upon these particular documents. The only explanation for appellants' securing signatures on the credit applications was that they intended to obtain a loan or advance of credit. Appellants say that since the Dayton Construction Company was not an approved lending agency of the FHA, this destroys any inference that they intended that the loans or advances of credit should be offered to or accepted by the FHA for insurance; but since they offered the signers of these papers eight documents bearing in large letters the well-known symbol "FHA," the jury was entitled to infer existence of intent that loans should be sought from the FHA. The jury had reason to believe that the use of these particular forms so many times was not a mere coincidence. The jury was also entitled to conclude that these particular applications and notes were employed to influence the action of the FHA. The verdict and judgment are supported by ample evidence.

Terry v. United States, 8 Cir., 131 F.2d 40, relied upon by appellants as requiring reversal in the instant case, remains to be considered. That decision involved an appeal from conviction and sentence under an indictment charging violation of 18 U.S.C., § 80,[4] which penalizes the wilful making of false or fraudulent statements or representations or the use of false bills, receipts, vouchers, rolls, accounts, claims, certificates, affidavits, or depositions, knowing the same to contain any fraudulent or ficticious statement or entry in any manner within the jurisdiction of the United States. The appellate court there stated that there was substantial evidence to indicate that the signatures of the applicants had been obtained by fraud, but determined that the acts of the defendants were in a matter not within the jurisdiction of the United States, and hence not covered by the statute. The section involved herein is 1731(a), 12 U.S.C., which defines an offense different from that defined in 18 U.S.C., § 80, and the Terry case is not in point.

Reass v. United States, supra, involved a question of venue, and sheds no light upon the present case, where the record affirmatively shows that all the documents in evidence were discounted through an authorized lending institution of the FHA doing business in the district in which the appellants were prosecuted.

The judgment of the District Court is affirmed.

---

3. Gibbs v. Linabury, 22 Mich. 479, 7 Am. Rep. 675; Soper v. Peck, 51 Mich. 563, 17 N.W. 57; Mitchell v. Tomlinson, 91 Ind. 167; Green v. Wilkie, 98 Iowa 74, 66 N.W. 1046, 36 L.R.A. 434, 60 Am. St.Rep. 184; Freedley v. French, 154 Mass. 339, 28 N.E. 272; National Cash Register Co. v. Merrigan, 148 Minn. 270, 181 N.W. 585; Lord v. American Mutual Accident Ass'n, 89 Wis. 19, 61 N.W. 293, 26 L.R.A. 741, 46 Am.St.Rep. 815; Klosterhuber v. Wisconsin State Bank, 218 Wis. 191, 260 N.W. 644. Cf. Schmidt v. Bank of Commerce, 234 U.S. 64, 34 S.Ct. 730, 58 L.Ed. 1214.

4. 1948 Revised Criminal Code, 18 U.S.C. A. § 1001.