Sidney Norman **BRILLIANT**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16806.**

United States Court of Appeals
Eighth Circuit.

Jan. 2, 1962.

Rehearing Denied Jan. 22, 1962.

**386**

Norman S. London, St. Louis, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee, D. Jeff Lance, U. S. Atty., St. Louis, Mo., on the brief.

Before SANBORN and VAN OOSTERHOUT, Circuit Judges, and GRAVEN, Senior District Judge.

GRAVEN, Senior District Judge.

The appellant appeals from a judgment of conviction and sentence imposed upon him following a trial and verdict of guilty by a jury under an indictment in one count. The appellant was sentenced to fifteen months' imprisonment and to pay a fine of $500. On October 11, 1960, a Grand Jury for the Eastern District of Missouri returned the following indictment:

"The Grand Jury charges:

"That on or about August 20, 1959, at St. Louis, Missouri, within the Eastern Division of the Eastern District of Missouri,

"Sidney Norman Brilliant

did make, pass, utter and publish and cause to be made, passed, uttered and published a statement to First Bancredit Corporation, knowing same to be false, for the purpose of obtaining a loan and advance of credit from said First Bancredit Corporation with the intent that such loan be offered to and accepted by Federal Housing Administration for insur-

ance and for the purpose of influencing the action of said Federal Housing Administration. The said false statement was contained in a certain credit application for property improvement loan made and signed by Frank White and Bessie White on which said application it is stated that the proceeds of the loan applied for, $2180.00, would be used for the improvement of property located at 327 Jefferson, Valley Park, Missouri, when in truth and in fact $664.04 of the proceeds of said loan was intended to be used for other purposes, to wit, to pay off and satisfy an automobile loan then owing by the said Frank White and Bessie White, which defendant well knew.

"In violation of Section 1010, Title 18, United States Code."

Section 1010, Title 18 United States Code, provides, in part, as follows:

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance * * * or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false * * * shall be fined not more than $5,000 or imprisoned not more than two years, or both."

The appellant, hereafter referred to as the defendant, raises and argues three points in his appeal. His first point is that the trial court erred in refusing to furnish the defendant with a transcript of the grand jury testimony of Mrs. Bessie White, a government witness, and in refusing to examine that testimony in camera in order to determine whether such transcript should be furnished to the defense for use in cross-examination of Mrs. White. His second point is that the trial court erred in restricting defendant's cross-examination of Mrs. White as

to her testimony before the grand jury. His third point is that the trial court erred in failing to sustain the defendant's motion for judgment of acquittal.

The defendant did not offer any testimony at the trial. From the testimony offered by the government, it appears that during the year of 1959 the J. & L. Construction Company was engaged in the making of home improvements in the City of St. Louis. During that year it employed three salesmen. It also made use of a number of canvassers. These canvassers would go from door to door trying to ascertain if home owners would be interested in making improvements. If a home owner manifested interest in making home improvements the canvasser would arrange for an appointment with a salesman for the J. & L. Construction Company. During the year of 1959 the defendant was in the employ of that company as a salesman and one Gary Dardick was a canvasser for that company. In 1959 Frank White and his wife, Bessie White, resided in St. Louis. Mrs. White had a seventh grade education. Frank White could sign his name but otherwise could not write. He could not read. In 1957 the Whites had purchased a home for the sum of $7,500 for which they were paying at the rate of $75 a month. Prior to July, 1959, they had purchased an automobile for which they were paying at the rate of $69.80 a month. Mr. White was employed by a plumbing company as a plumber-laborer. He was paid $3.05 an hour and worked a forty-hour week. He worked very little overtime.

In the latter part of July and the first part of August, 1959, the defendant called on the Whites three times at their home. The first two times he was alone. The third time he was accompanied by a man referred to by him as "Dad." The first time the defendant called on the Whites he informed them that he was selling aluminum siding. He discussed with them the matter of improvements to their home. He told them that he would put aluminum siding on their home and put in a picture window and door for a total

of $1400. The Whites informed him that they were making payments of $75 a month on their home and $69.80 a month on their automobile and could not afford the proposed improvements. The Whites informed him that they owed $698 on the automobile loan. At this point, the defendant informed them that he could arrange it so that the unpaid balance on the automobile loan could be added to the amount of a loan for the home improvements and that the monthly payments on the combined amount would only be about a dollar a month more than their payments on their automobile loan. As a result of the defendant's efforts, the Whites signed several documents. They signed a contract with the J. & L. Construction Company dated August 6, 1959, under which the latter was to furnish all materials and labor necessary for the proposed improvements in return for the sum of $2,180 payable in 36 monthly payments of $70.08 each. They signed a credit application dated August 6, 1959, for a loan of $2,180. It appears that they also signed a promissory note for $2,180.

The automobile loan of the Whites was held by Mutual Bank and Trust Company of St. Louis. In connection with that loan the Whites were given a coupon book with a coupon for each payment. This was referred to as their car payment book. On the second visit of the defendant, the Whites produced their car payment book. The defendant took it stating that he would pay off the loan. On the third visit of the defendant he gave them the car payment book which bore a "paid" stamp on it. Mrs. White testified that they signed the credit application on the third visit. The other documents were signed by them on either the second or third visit. The Whites did not prepare any of the documents signed by them. They were presented to them for their signature by the defendant in prepared form. The credit application signed by the Whites was entitled, "Credit Application for Property Improvement Loan" followed by the statement, "This application is submitted to obtain credit under the terms of Title I of the National Hous-

ing Act." Below the latter appears the following: "To First Bancredit Corporation." The application gave the legal description of the residence property of the Whites and further stated: "Proceeds of This Loan Will be Used to Improve the Above Described Property as Follows:" The following were listed as the contemplated improvements: aluminum siding, new window and door. Near the bottom of the application the following appears:

"Warning

"Any person who knowingly makes a false statement or a misrepresentation in this application shall be subject to a fine of not more than $5,000 or by imprisonment for not more than 2 years, or both, under provisions of the United States Criminal Code."

In the credit application, the purchase price of the White residence was given as $8,500. The purchase price was $7,500 and the defendant had been so informed by the Whites.

Prior to the execution of the credit application, the Whites informed the defendant as to Mr. White's earnings. In the application it was stated that the Whites had a present salary or net income from business of $550 a month. In the application it was stated that they had other income of $175 a month and that the source of that income was the rent of a downstairs apartment. The Whites did not have any downstairs apartment. They did not state to the defendant that they had such other income. At the bottom of the application appears the following: "I (we) certify that I (we) am (are) the person(s) who sold this job. Name /s/ Gary Dardick." Gary Dardick testified that the signature was not his signature and that he had not met the Whites. The papers signed by the Whites were delivered by them to the defendant and he left their home with them. The papers were received by the St. Louis branch of the First Bancredit Corporation sometime prior to August 20, 1959. On August 20, 1959, it issued its check to the J. & L. Construction Company in the amount of $2,180, which check was endorsed by that company and paid by the bank on which it was drawn.

Arthur Talarico, office manager and credit manager of the St. Louis branch of the First Bancredit Corporation, testified that during the year 1959 the J. & L. Construction Company was one of the dealers who handled home improvement financing through First Bancredit Corporation. He testified that in 1959 all of the home improvement loans financed by that lending agency for the J. & L. Construction Company were financed "only on F.H.A." He testified that when home improvement loan papers come in he examines them to see if they are acceptable for insurance under Federal Housing Administration regulations before issuing a check to the dealer. Mr. Talarico did not testify directly that this particular home improvement loan was in fact tendered to the Federal Housing Administration and accepted by it for insurance.

On cross-examination of Mr. Talarico, inquiry was made as to the date of August 6, 1959, appearing on the construction contract and the credit application. He answered:

"May I explain the August 6th? On August 6th or within seven days of August 20th, the application was phoned into us, at which time we gave our credit approval and under F.H.A. regulations they have to wait seven days before they can be paid for the work that has been done."

On August 17, 1959, the Mutual Bank and Trust Company, the holder of the automobile loan of the Whites, was paid the amount of the balance on that loan which was in the sum of $688. The car payment book used by the Whites bears a stamp mark, "Paid Aug 17 1959 Mutual Bank and Trust Co."

The defendant's motion for a judgment of acquittal was based on several grounds. He contends that there was no evidence presented to show that the application was in fact submitted to the Federal Housing Administration or accepted by it. The indictment follows

the language of Section 1010, Title 18 United States Code. The indictment does not charge nor does Section 1010 require that it be charged in an indictment under that Section that the loan in connection with which the false statement is made be submitted to the Federal Housing Administration or accepted by it. The charge against the defendant was that he passed, uttered, and published a statement which he knew to be false with the intent that the loan to which it related be offered to and accepted by the Federal Housing Administration. The question is not whether the loan in question was in fact offered to and accepted by the Federal Housing Administration but whether at the time he passed, uttered, or published the false statement he did so with *the intent* that it be offered to and accepted by the Federal Housing Administration. Haakinson v. United States (8th Cir., 1956), 238 F.2d 775, 780. See also Cohen v. United States (6th Cir., 1949), 178 F.2d 588, 591, certiorari denied (1950), 339 U.S. 920, 70 S.Ct. 623, 94 L.Ed. 1344. The government was not required to prove that the loan in question was in fact offered to and accepted for insurance by the Federal Housing Administration.

█ The defendant contends that the evidence is insufficient to sustain a finding of the jury that he knowingly made or caused to be made the false statement charged. He is charged with having made or caused to be made the statement in the credit application that the proceeds of the proposed loan would be used to pay for the home improvements listed in the application when in truth and in fact it was intended that part of the proceeds of the loan would be used to pay the automobile loan. The credit application containing the false statement was presented by the defendant to the Whites in a prepared form for their signatures. The defendant had earlier informed the Whites that he would arrange to take care of the automobile loan out of the proceeds of the home improvement loan. The evidence is sufficient to sustain a finding by the jury

that the defendant either made or caused the false statement to be made.

It is the contention of the defendant that the evidence is insufficient to justify a finding by the jury that he passed, uttered, and published the credit application containing the false statement or caused the same to be passed, uttered, and published. The defendant took the credit application with him after it had been signed by the Whites. The application then appears in the hands of the First Bancredit Corporation to whom it was addressed. The evidence was sufficient to sustain a finding by the jury that he either passed, uttered, or published the credit application containing the false statement or caused it to be passed, uttered, and published.

It is the contention of the defendant that the evidence is insufficient to sustain a finding of the jury that he made, passed, uttered, and published the false statement with the intent that it be offered to and accepted by the Federal Housing Administration for insurance and for the purpose of influencing the action of that Administration. In regard to this matter, Mr. Talarico testified that during the year of 1959 all loans handled by the First Bancredit Corporation for the J. & L. Construction Company were "only on F.H.A." The credit application on its face prominently stated that it was submitted to obtain credit under Title I of the National Housing Act. It contained a warning that the making of a false statement or misrepresentation constituted a federal crime. The defendant was a salesman for the J. & L. Construction Company selling home improvements which were being financed through Federal Housing Administration loans. Under Title I of the National Housing Act, Section 1703, Title 12 United States Code Annotated, insurance against loss is provided to qualified financial institutions only for loans made for improvements to real property. Automobile loans are not eligible for such insurance. The overstating in the credit application of the agreed cost of the home improvements by the approximate amount of the automo-

bile loan for the apparent purpose of concealing the fact that it was intended that the proceeds of the proposed home improvement loan would be used to pay the automobile loan is of evidentiary significance.

In the case of Ross v. United States (6th Cir., 1950), 180 F.2d 160, the defendants had been convicted under Section 1731(a), Title 12 United States Code. That Section is substantially similar to Section 1010, Title 18 United States Code. The Court in that case stated (pp. 164–165):

"The insistence of appellants that they should have had a verdict directed in their favor is not well grounded. They urge that there was no proof that the applications were made with the intent that the loans should be offered to the Federal Housing Administration. As in the Cohen case, [178 F.2d 588], appellants furnished the signers of the documents FHA forms upon which was prominently displayed, on the top line: 'FHA Title I Credit Application'. As stated in the opinion in that case, the jury was privileged to infer existence of intent that loans should be sought from the Federal Housing Administration, and that the particular applications and notes were used to influence the action of that governmental agency. This being true, there was no error in the refusal of the district judge to charge, as requested by appellants, that in order to convict it must be found that appellants had 'actual knowledge that said credit application would be offered by the Universal C. I. T. Credit Corporation to or accepted by the Federal Housing Administration for insurance and that the action of said Federal Housing Administration would be influenced thereby'; * *."

In the present case the evidence is sufficient to sustain a finding by the jury that the defendant passed, uttered, and published the credit application containing the false statement or caused it to be passed, uttered, or published with the intent that it be offered to and accepted by the Federal Housing Administration and for the purpose of influencing the action of that Administration.

■ The defendant urges two other grounds in connection with his motion for judgment of acquittal. While he refers to those grounds as being related to insufficiency of the evidence, it appears that in essence what he urges are claimed variations between the allegations in the indictment and the proof. A variance between the allegations of an indictment and the proof are not prejudicial unless the defendant was misled at the trial or unless the variance was capable of depriving him of protection against another prosecution for the same offense. Haakinson v. United States (8th Cir., 1956), 238 F.2d 775, 781.

■ The defendant urges that while the indictment alleges that the amount of the automobile loan in question was $664.04 the proof was that the amount of the loan was $688. That variation was trivial and could not possibly have prejudiced the defendant.

■ The defendant also urges that the indictment states that the falsity was the intent to use part of the home improvement loan to pay off an automobile loan *then owing* while the testimony of Mrs. White was that the credit application containing the false statement was made out during the defendant's third visit, at which time the car payment book was returned already marked "paid." The defendant argues that such being the situation there was no automobile loan "then owing" and hence the possibility of falsity as charged in the indictment was nonexistent. The Mutual Bank and Trust Company was paid the amount of the automobile loan on August 17, 1959. On August 20, 1959, the J. & L. Construction Company received from the First Bancredit Corporation the proceeds of the improvement loan in the amount of $2,180. That amount was $780 in excess of the agreed cost of the home improvements to be made by the J. & L. Construction

Company. It is, therefore, apparent that the J. & L. Construction Company was reimbursed for the amount that had been paid to the Mutual Bank and Trust Company on the automobile loan. The fact that on August 20, 1959, the J. & L. Construction Company was reimbursed in that amount would negative the claim that the automobile loan was not "owing" on August 17, 1959, at the time the credit application was signed by the Whites. As heretofore noted, Mr. Talarico of the First Bancredit Corporation testified that within seven days of August 20, 1959, the application had been telephoned to that corporation and credit approval given. The jury could well have found that the situation was that the J. & L. Construction Company had secured credit approval of the loan prior to August 17, 1959, by telephone and thereupon it advanced the money to take care of the automobile loan under its arrangements with the Whites and that thereafter and until the J. & L. Construction Company was reimbursed for advancing the amount necessary to take care of the automobile loan the automobile loan was owing to that company by the Whites. There is nothing in the record which would tend to indicate that either the J. & L. Construction Company or the defendant intended to make the Whites a gift in the amount of the automobile loan. The evidence was sufficient to sustain a finding by the jury that at the material time in question the automobile loan was "then owing" by the Whites. The motion of the defendant for judgment of acquittal was properly overruled by the District Court.

The other claimed errors on the part of the District Court have to do with the matter of grand jury minutes. At the end of the direct examination of Mrs. White and prior to cross-examination, the defendant requested that he be given any statement made by the witness to the government and the grand jury testimony of the witness. The defendant was then furnished with a written statement several pages in length given by Mrs. White to a Special Agent of the Federal Bureau of Investigation on March 23, 1960. The government's objection to the production of a transcript of the grand jury witness was sustained. The defendant thereupon requested the trial judge to examine the grand jury testimony of the witness in camera to determine whether the defendant should be allowed to see and use that testimony in connection with the cross-examination of the witness. That request was refused.

The defendant conducted a long cross-examination of the witness in which extensive use was made of the statement she had given to the Special Agent of the Federal Bureau of Investigation. No serious contradictions between the testimony of the witness and the statement were developed. Near the end of the cross-examination of the witness, the defendant sought to examine her as to whether she had testified before a grand jury and whether there was any divergence between her testimony at the trial and her testimony before the grand jury. The government objected to such examination. The defendant then stated that he wished the grand jury testimony to ascertain whether the witness had informed the grand jury as to alleged false information contained in the credit application. The objection of the government was sustained.

In the recent case of Berry v. United States (Oct. 27, 1961), 8 Cir., 295 F.2d 192, cert. denied 82 S.Ct. 398 (Jan. 8, 1962) in a somewhat similar situation, this Court held that the trial judge did not abuse its discretion in refusing to examine the grand jury testimony of a witness for possible inconsistencies. In the opinion in that case Judge Sanborn discussed the present state of the law as to grand jury minutes. No useful purpose would be served by again discussing matters so well covered by Judge Sanborn. In the present case there was no abuse of discretion on the part of the trial court in refusing to make the grand jury testimony of the witness Mrs. White available for the defendant or in refusing to examine a transcript of her grand jury testimony for possible inconsistencies. The defendant had the benefit of the long

and detailed statement made by Mrs. White to a Special Agent for the Federal Bureau of Investigation on March 23, 1960, which differs in no material respect from her testimony at the trial. It would seem unlikely that Mrs. White's testimony before the grand jury which returned the indictment varied in any material respect from the testimony she had given at the trial. We do not believe that the defendant met the burden of showing a "particularized need" for the grand jury testimony of Mrs. White or that he suffered any prejudice as a result of such testimony not being made available.

The defendant in the present case was found guilty following a fair and impartial trial in which no error was committed. The judgment of conviction and sentence is affirmed.